(July 1, 1904.)

## IDAHO MUTUAL CO-OPERATIVE INSURANCE COMPANY v. MYER, INSURANCE COMMISSIONER.

[77 Pac. 628.]

STATUTORY CONSTRUCTION—LOCAL LAW.

1. Statutes will be construed with a view to ascertain the intent of the law-making power and to give force and meaning to the language used.

2. A statute that deals exclusively with one subject and repeals all acts and parts of acts in conflict with it will be construed to have been intended to cover all subjects and matters of the new act.

3. The legislature may enact a law relative to one class of insurance so long as it is general in its terms as to that particular class of business.

(Syllabus by the court.)

ORIGINAL action in this court. Application for a writ of mandate. Writ granted.

Davidson & Hutchinson, Good & Roberts and H. J. Jones, for Plaintiff.

The fact that an act classifies persons who may form a corporation, or the purposes for which corporations may be formed, or the corporations which shall enjoy powers or privileges granted, does not render it a special act, if the classification is reasonable, and if the act applies to all persons or corporations falling within the particular classes. (1 Clark & Marshall on Private Corporations, pp. 105, 106; *Attorney General v. McArthur,* 38 Mich. 204; *In re New York Elevated R. Co.,* 70 N. Y. 327; *Hazelett v. Butler University,* 84 Ind. 230; *City of Indianapolis v. Navin,* 151 Ind. 139, 47 N. E. 525, 51 N. E. 80, 41 L. R. A. 337; *Atlantic City Water Works Co. v. Consumers' Water Co.,* 44 N. J. Eq. 427, 15 Atl. 581; 23 Am. & Eng. Ency. of Law, 1st ed., 149; *Edmonds v. Herbrandson,* 2 N. Dak. 270, 50 N. W. 970, 14 L. R. A. 725; *Bray v. Hudson Co.,* 50 N. J. L. 82, 11 Atl. 135; *Davis v. Clark,* 106 Pa. St. 377; *Van Riper v. Parsons,* 40 N. J. L. 1.) When a corpora-

tion is organized under a general corporation law authorizing the formation of such corporation, its charter consists of the law under which it is organized, and the articles or certificate of association or incorporation adopted or issued in pursuance of the law, in so far as they are in compliance with and authorized by the law. (1 Clark & Marshall on Private Corporations, p. 375; *Granger's Life etc. Ins. Co. v. Kamper,* 73 Ala. 325; *People v. Chicago Gas Trust Co.,* 130 Ill. 268, 17 Am. St. Rep. 319, 22 N. E. 798, 8 L. R. A. 497; *Chicago Municipal G. L. & F. v. Town of Lake,* 130 Ill. 42, 22 N. E. 616; *Van Etton v. Eaton,* 19 Mich. 187; *Taggart v. Perkins,* 73 Mich. 303, 41 N. W. 426; *State v. Central Iowa R. Co.,* 71 Iowa, 410, 60 Am. Rep. 806, 32 N. W. 409; *Abbott v. Omaha S. & R. Co.,* 4 Neb. 416; *Lincoln Shoe Mfg. Co. v. Sheldon,* 44 Neb. 279, 62 N. W. 480; *Society etc. v. Commonwealth,* 52 Pa. St. 125, 91 Am. Dec. 139; *Knights of Pythias v. Weller,* 93 Va. 605, 25 S. E. 891; *Gould v. Fuller,* 79 Minn. 414, 82 N. W. 673; *Groin v. Potter's Co-op. Co.,* 29 Wkly. Law Bul. (Ohio) 52.) The question for the court is, What did the legislature really intend to direct? And this intention must be sought in the whole act taken together, and other acts *in pari materia.* (Sutherland on Statutory Construction, secs. 260, 286, 287.)

John A. Bagley, Attorney General, for Defendant, cites no authorities on question decided.

STOCKSLAGER, J.—This is an original proceeding in this court to determine the right of plaintiff to conduct its business in this state without paying the annual license and taxes as provided by the Session Laws of 1901. The hearing was on a demurrer. We find the following headlines for chapter 2 of that act:

"General Provisions Dealing Entirely With Insurance Companies Other Than Fraternal Beneficiary Societies.

"Sec. 1. It shall not be lawful for any person to act within this state as an agent or otherwise in soliciting or receiving applications for insurance of any kind whatever or in any manner to aid in the transaction of the business of any insurance company incorporated in this state, or out of it, without first pro-

curing a certificate of authority from the insurance commissioner.

"Sec. 2. It shall be the duty of the president, or the vice-president and secretary of every insurance company doing business in this state, annually, on or before the first day of April of each year, to prepare, under oath, and deposit with the insurance commissioner of this state a full, true and complete statement of the condition of said company on the last day of the month of December preceding."

Section 3 provides that the annual statement shall contain: "1. The name of the company and where located. 2. The names and residences of the officers of said company doing business in the state. 3. The amount of the capital stock or assets of the company. 4. The amount of capital stock paid up. 5. The property or assets held by the company, viz.: The real estate owned by such company; the amount of cash on hand and deposited in banks to the credit of the company; the amount of cash in hands of agents; the amount of cash in course of transmission; the amount of loans secured by first mortgage on real estate, with the rate of interest thereon; the amount of all bonds and other loans, the rate of interest thereon; all other securities, their description and value. 6. The liabilities of such company, specifying the losses adjusted and due; losses adjusted and not due; losses unadjusted; losses in suspense and the cause thereof; losses resisted and in litigation; the amounts due banks or other creditors; the amount of money borrowed by the company; the rate of interest thereon and how secured; the net value of all policies in force, circulated as per the combined experience table of mortality, at four per cent interest, and all other claims against the company, describing the same. 7. Net surplus over all liabilities. 8. The income of the company during the preceding year, stating the amount received for premiums, specifying separately health, life, fire, marine or inland premiums, deducting reinsurance; the amount received for interest and from all other sources. 9. The expenditures during the preceding year, specifying the amount of losses paid during said term; the amount paid for return premiums. 10. The amount of risk written during the preceding year."

Section 13 of the same act provides that "All insurance companies now doing business in this state, or that may hereinafter do business in this state, under the provisions of this chapter must file with the insurance commissioner annually, on or before the fifteenth day of April of each year, a statement under oath stating the amount of all premiums received by said company during the year ending December 31st preceding in this state, and the amount actually paid policy-holders during the same time, and shall pay into the state treasury a tax of two per centum on all such premiums collected, less the amount of all losses actually paid policy-holders, and premiums returned. The commissioner shall file such verified statement and schedule in his office and certify the amount of gross receipts, less amounts of losses actually paid policy-holders and premiums returned as aforesaid to the state treasurer. Within thirty days thereafter such insurance company shall pay or cause to be paid into the state treasury a tax of two per centum, or two per centum upon all such gross receipts, less such amounts of losses actually paid policy-holders and premiums returned in the state of Idaho, which payment, when made, shall be in lieu of all taxes upon the personal property of such company, and the shares or stock or assets therein."

The legislature of 1903 enacted a law with the following title: "To Authorize the Organization of Mutual Co-operative Insurance Companies, to Insure Both Personal and Real Property Against Loss by Fire, Lightning, Tornado, Cyclone, Windstorm, and the Fidelity of Persons and to Regulate Their Conduct."

This act was approved March 10, 1903 (Sess. Laws 1903, pp. 74-81, inclusive).

Section 1 provides for the organization as follows: "Any number of persons residing in this state who own personal or real property of not less than $100,000 in value, which they desire to have insured, may associate themselves together for the purpose of mutual co-operative insurance against loss by fire, lightning, tornadoes, cyclone, windstorm and the fidelity of persons, and form an incorporated company for such purposes and issue policies. Such companies shall embody the words, 'Mutual Co-operative,' in its name."

Section 2 provides that "The articles of incorporation of such company shall be filed with the insurance commissioner for examination. If by him found to be in accordance with the provisions of this act, and the name of such company is not similar to the name of any other insurance company organized in this state, he shall thereupon deliver to such company a certified copy of the articles of incorporation, which on being recorded in the office of the recorder of the county where the principal office of such company shall be located, and a copy thereof, certified by the county recorder, filed with the Secretary of State, the Secretary of State must then issue to the corporation, over his official seal, a certificate that a copy of the articles containing the required statement of facts has been filed in his office; and thereupon the persons executing the articles, and their associates and successors, shall be entitled to transact business . . . . for the term of fifty years, unless it is in the articles of incorporation otherwise stated, or by law otherwise specially provided."

Other sections of this act provide for the general management of the business of companies organized under the provisions of this law until the twelfth section, which provides for assessments, to wit: "All assessments shall be determined by proper classification and rating of the property insured, so that each member will be assessed according to the greater or less risk of the property insured to the hazard insured against. An assessment may be made on the members due and payable within thirty days thereafter, to enable the company to provide for losses and expenses necessary in the conducting of its business whenever the board of directors so determine. No assessment shall be made on a member for liabilities incurred prior to his or her membership. Any member may be excluded from the benefits of insurance during all the time in which he or she may be in default of payment of an assessment, and the acceptance of such assessment after the same has become delinquent shall not in any manner make the company liable for any loss or damage that may have occurred during the period that such policy was suspended. Any member shall not be liable directly to any other member for such other member's

loss or damage, but the liability of a member shall be solely and exclusively through the channel and process of an assessment, and the amount of such assessment shall be only his *pro rata* share in proportion to the amount of insurance carried and rate on the same of all losses and expenses, making reasonable allowances and deductions for uncollectible and unpaid assessments."

Section 13 provides how losses shall be paid, and section 14 provides that any disputes between members and the company shall be settled by arbitration. Section 15 provides how a member may withdraw from the company and how his policy shall be canceled. Section 16 provides that such companies shall be bodies corporate. Section 17 provides for an annual statement requiring the president and secretary to prepare, under oath, a full and complete statement of the condition of the company on the thirty-first day of December each year and present the same at the annual meeting of the members. Section 18 provides for certificates, to wit: "It shall be the duty of such company to file an annual statement with the proper insurance department of this state not later than the thirty-first day of January of each year, on blank furnished by said insurance department. Such department, if it thinks necessary, or one deputized by it, having no interest in an insurance company and unprejudiced, may make an examination into the affairs of such company, and for such purposes shall have access to all the books and files of the company, and may examine the officers and other witnesses under oath. If such company is doing business in accordance with and under the provisions of this act, is solvent and properly managed, the insurance department shall furnish such company and its authorized agents a certificate stating that such company has complied with the provisions of this act and is authorized to do business for the ensuing year, unless certificate is sooner revoked. If upon such examination it shall appear to the department that the condition of such company does not justify it continuing in business, it may apply to the district court of the county where the principal office of such company is located for an order requiring such company to show cause why it

should not be closed. For examining the company's annual report and issuing certificate it shall be paid $————, and for each agent's certificate $————."

Section 19 provides penalties for any company or agent to do business without authority given them by the insurance department. Section 20 permits other mutual insurance companies, doing business in this state under any of the provisions of the law thereof, with the written consent of a majority of the members, to accept the conditions of this act and thereupon be governed by it. Before such company shall be entitled to the benefits of this act, it shall file with the insurance department its articles of incorporation and by-laws and record a certified copy thereof as provided by section 2 of this act.

Section 21 provides: "All acts and parts of acts in conflict with the provisions of this act are hereby repealed in so far as they affect any company or companies hereafter organized under or taking advantage of this act."

We have endeavored to recite every provision of the Session Laws of 1901, as well as the act of 1903, that will throw any light on the questions that are submitted to us for determination. The plaintiff insists that it is subject to the provisions of the law of 1903 only, whilst the attorney general, for the defendant, insists that the plaintiff is not only subject to and controlled by the law of 1903, but all the provisions of the law of 1901. The entire contention seems to be the payment of the two *per centum* tax on the earnings of the company; yet, if we understand the articles of incorporation and by-laws of the plaintiff, we are unable to see how it can be affected by the provision of the law of 1901, requiring the payment of two *per centum* on the net earnings of the company, as it does not seem that there is ever a fund accumulated only as it may be necessary to pay losses or conduct the business of the company. The law of 1901, seems to have been enacted to require all classes of insurance companies—except fraternal organizations—to pay two *per centum* on their gross earnings, less their losses and premiums returned, and this shall be in lieu of their personal property taxes.

It would seem that if the legislature did not want to encourage the citizens of the state to engage in insurance of the character contemplated by the organization and by-laws of the plaintiff corporation, that it would have been unnecessary to enact the law of 1903 with all its provisions governing companies of this character. We think it was the intention of the legislature to encourage the organization of corporations of this kind to engage in mutual insurance, and thus save the citizens of the state thousands of dollars that go elsewhere each year in payment of premiums. If a number of citizens can join together in an organization or corporation and by their mutual acts protect each other from loss by fire on the payment of the actual loss with the small expense of conducting the business, and thus save the payment of premiums to foreign corporations, it is certainly commendable in the citizens as well as just and wise legislation. The very fact that the legislature required that such companies should embody the words "Mutual Co-operative" in their names, is significant, and we think signifies that it was the intention to allow corporations of this character to conduct their business on a cheap, equitable plan and as an inducement to the organization of such companies, provided that they should be protected from the assessment of any taxes against them. The amount to be paid to the insurance commissioner is left blank in section 18 of the act, as well as the amount to be paid for each agent's certificate.

It seems to be conceded that the plaintiff paid the insurance commissioner $50, and counsel for plaintiff does not dispute the right of the department to collect this sum from the plaintiff annually. This being true, we do not feel called upon to pass upon this question, as it has been paid, and the next legislature can make such modifications as seems best to settle the question of fees to be paid.

A number of authorities are cited by counsel for plaintiff in support of their contention that the act of 1903 is not class legislation. In our view of the case the legislature is empowered to pass any and all laws in the interest of the people and for the betterment of their condition. So long as they do not infringe upon the rights of one class in the interest of or

for the benefit of another they are within their constitutional power, and in the passage of the act of 1903 providing for the organization of companies or corporations of the character of the plaintiff, we are unable to see any injustice done one class in the interest of another, hence the writ of mandate will issue.

This being a final action, and the defendant being a state officer, no costs are awarded.

Sullivan, C. J., and Ailshie, J., concur.