(January 19, 1914.)

## A. J. ANDERSON, Appellant, v. GREAT NORTHERN RAILWAY CO., Respondent.

### [138 Pac. 127.]

LABORER'S LIEN—LABOR UPON RAILROAD TIES—LOGGER'S LIEN FOR GROCERIES AND SUPPLIES—TIES INCLUDED IN TIMBER—TITLE TO ACT NOT QUESTIONED AFTER SECTION INCLUDED IN REVISED CODES—SECTIONS 5125 AND 5140 CONSTRUED—CHAP. 226, 1911 SESS. LAWS, HELD UNCONSTITUTIONAL—DUE PROCESS OF LAW.

1.  Sec. 5125 of the Rev. Codes which provides that "every person performing labor upon, or who shall assist in obtaining or securing, saw-logs, spars, piles, cordwood, or other timber, or in obtaining or securing the same," is sufficiently broad and comprehensive to confer a lien upon laborers who work in the employ of a contractor in moving a large quantity of railroad ties a distance of a couple hundred feet from the place where they were piled upon the railroad company's right of way and loading them upon cars for transportation.

2.  *Held,* further, that the statute, sec. 5125, confers the same lien in favor of every person "performing labor upon" saw-logs, etc., as it confers on every person who assists in "obtaining or securing" such material.

3.  A statute (sec. 5125) which confers a lien in favor of laborers who perform work upon or aid in obtaining or securing "saw-logs, spars, piles, cordwood, or other timber," is sufficiently broad and comprehensive to confer a lien in favor of persons who work upon or assist in obtaining or securing railroad ties, and the words "other timber" are sufficiently comprehensive to include ties.

4.  Sec. 5140 of the Rev. Codes, which provides for the recovery of damages from anyone who eloigns certain property on which a lien exists for labor performed, is held constitutional and valid.

5.   Where a section of a legislative act has been incorporated in the Revised Codes and adopted as a part of the complete statutes of the state, the court will not inquire into or consider the sufficiency of the original title of the act in which such section was originally adopted by the legislature.  In such case, it is too late to raise the sufficiency of the title to the original act which was adopted prior to the date of its incorporation and adoption in the Revised Codes of the state.

6.   *Held,* that sec. 5140 of the Rev. Codes is not obnoxious to sec. 1 of the fourteenth amendment to the federal constitution as depriving anyone of his property without due process of law or denying him the equal protection of the laws.

7.   The purpose and intent of sec. 5140 of the Rev. Codes is to render every person who injures, destroys or removes any of the property therein described on which a lien exists liable for the amount of the claim held against the property, or if the property be of less value than the lien claimed, then it allows the claimant the damages which he has sustained by reason of the removal or destruction of the particular property.

8.   *Held,* that chap. 226 of the 1911 Session Laws is invalid, void and inoperative, for the reason that it does not provide for any notice to the owner of the property on which the lien is to attach, and affords him no means or method of protecting himself against such claim, and does not provide a method of procedure for taking his property for such claim by "due process of law" and does not give such property owner the "equal protection of the law."

9.   No process is "due process" which does not give notice, either actual or constructive, and no taking of property for debt is lawful unless the debt has been created with the knowledge and consent of the debtor.

APPEAL from the District Court of the Eighth Judicial District for Bonner County.   Hon. John M. Flynn, Judge.

Action to establish certain liens against railroad ties and to assess the amount of damages sustained by the plaintiff by reason of the eloignment of the ties by the defendant and to have the amount of damages trebled.   Judgment for the defendant.   Plaintiff appealed.   *Reversed.*

G. H. Martin, for Appellant.

The lien in favor of these six men was created and came into existence when the work was done.   The filing of the

statement of the claims for the lien does not create the lien but merely perpetuates it. (25 Cyc. 1588; *Viles v. Green,* 91 Wis. 217, 64 N. W. 856; *Day v. Green,* 63 Or. 293, 127 Pac. 772.)

Because of the presence of the words "cordwood" and "shingle bolts" preceding the words "or other timber," it was held that a person performing labor upon or who assisted in obtaining and securing any other completely manufactured product was entitled to a lien. (*Forsberg v. Lundgren,* 64 Wash. 427, 117 Pac. 244.)

The decision of the Washington court under a statute from which our own was copied can leave no doubt but that the words "other timber" in sec. 5125, preceded by the words "cordwood," require a construction to be placed thereon which includes every other species of manufactured product.

The laws giving the right to a lien on logs and lumber for services or supplies rendered in connection therewith are constitutional. (25 Cyc. 1581; 20 Am. & Eng. Ency. of Law, 350.)

"Although an act from which a section of the code was taken is subject to the constitutional objection, that it contains matter different from that embraced in the title, this defect in the act does not render the section of the code invalid." (26 Cyc. 1068.)

Practically every state that has any lumber industry at all has placed in its code statutory provisions which give to the laborer a lien for the labor performed in the manufacture and transportation of timber products, and some of the states have provided for the creation of liens for supplies furnished to contractors engaged in manufacturing or transporting timber products. Georgia, New Hampshire and Wisconsin each have supply lien laws. (Chap. 14, Jones on Liens; *Stacy v. Bryant,* 73 Wis. 14, 40 N. W. 632; *St. Croix Timber Co. v. Joseph,* 142 Wis. 55, 124 N. W. 1049.)

In the case of *Jones v. Great Southern Fireproof Hotel Co.,* 86 Fed. 370, 30 C. C. A. 108, will be found a full, complete and able discussion of the constitutionality of a lien law of Ohio, which the supreme court of Ohio had held invalid on

the same grounds assigned by respondent here, and which the federal court, through Circuit Judge Lurton, holds to be valid and not in contravention of the due process clause of the federal constitution. (Affirmed by U. S. supreme court in *Great Southern Fireproof Hotel Co. v. Jones*, 193 U. S. 532, 24 Sup. Ct. 576, 48 L. ed. 778. See, also, 4 Ann. Cas. 620, and note, and 24 Ann. Cas. 339, and note.)

A mechanic's lien law, when so construed as to give a lien for a debt due to a person further removed from the owner than the first subcontractor, is not unconstitutional as depriving the owner of his property without due process of law, or as interfering with the liberty of acquiring, possessing and protecting his property. (*Gardner & Meeks Co. v. New York Cent. R. R. Co.*, 72 N. J. L. 257, 62 Atl. 416; *Snyder v. New York Cent. R. R. Co.*, 72 N. J. L. 262, 62 Atl. 418.)

A statute which subjects property to a lien charged for the payment of a claim of a subcontractor against the principal contractor for labor and materials used in the building or improvement without regard to the condition of the account between the owner and the principal contractor does not deprive the owner of property without due process of law. If a subcontractor's liens are enforced by judgment under the statute and the judgment is collected by sale of the property or paid by the owner to save his property, the statute gives such owner a remedy by action against the principal contractor for all sums so paid by the owner in excess of the amount unpaid to the principal contractor. (*Mallory v. La Crosse Abattoir Co.*, 80 Wis. 170, 49 N. W. 1071; *Henry etc. Co. v. Evans*, 97 Mo. 47, 10 S. W. 868, 3 L. R. A. 332.)

C. S. Albert, H. H. Taylor and Thos. Balmer, for Respondent.

Lien statutes should receive neither a liberal nor a strict construction, but should be construed to embrace such cases as were clearly within the contemplation of the legislature and to exclude the cases which it is evident the legislature did not have in mind. (Jones on Liens, sec. 105; 19 Am. & Eng.

Ency. of Law, 24; *Hutchins v. Blaisdell,* 106 Me. 92, 75 Atl. 291.)

Since the statute before us does not expressly provide for a lien on railroad ties, we must consider whether they are included among "other timber." (25 Cyc. 1545; Jones on Liens, secs. 731, 732.)

"Logs, spars, piles, cordwood and other timber" are "obtained or secured" within the meaning of sec. 5125 when they come into the possession of the purchaser, even though the point of delivery be distant from the market and it require further transportation to get them to the point of consumption or beneficial use. (*McGeorge v. Stanton-De Long Lumber Co.,* 131 Wis. 7, 110 N. W. 788.)

The provision giving a lien to the cook is proof of the legislature's intent to confine the application of the statute to work performed in the logging camps. As to the meaning of the words "obtain or secure," see *Ryan v. Guilfoil,* 13 Wash. 373, 43 Pac. 351.

The act in which sec. 5140 was enacted was given a specific title which was not made broad enough to embrace the subject treated in said section. (*Gerding v. Board of County Commrs.,* 13 Ida. 444, 90 Pac. 357; *Megins v. Duluth,* 97 Minn. 23, 106 N. W. 89; *Somerset County Commrs. v. Pocomoke Bridge Co.,* 109 Md. 1, 71 Atl. 462, 16 Ann. Cas. 874; *Rouse v. Thompson,* 228 Ill. 522, 81 N. E. 1109; *Memphis St. R. Co. v. Byrne,* 119 Tenn. 278, 104 S. W. 460; *Patterson v. Close,* 82 N. J. L. 160, 83 Atl. 233.)

Sec. 5140, if enforced, would deprive the respondent of his property without due process of law. (*Rogers-Ruger Co. v. Murray,* 115 Wis. 267, 95 Am. St. 901, 91 N. W. 657, 59 L. R. A. 737, and note.)

This is a logger's lien statute, enacted for the security of workmen engaged in making timber products and getting them out to market, but not intended to protect persons hauling or moving the articles of timber, after they have become finished products and have been brought out of the woods.

This is the construction of an almost identical statute, which has been adopted by the supreme court of Washington. Sec.

5125 and the sections immediately following it in the Revised Codes are practically the same as similar legislation in Washington, from which they seem to have been copied. (*Ryan v. Guilfoil,* 13 Wash. 373, 43 Pac. 351.)

It appears that in every state in which such statutes have been enacted, the lien is confined by the terms of the statute to loggers and laborers in the woods. (Chap. 14, Jones on Liens.)

The only principle which can sustain a lien upon property for materials used or labor expended thereon, without the express or implied consent of the owner, is that he derives a benefit or advantage from the labor or material for which the lien is given. (*Van Stone v. Stillwell & B. Mfg. Co.,* 142 U. S. 128, 12 Sup. Ct. 181, 35 L. ed. 961; *Jones v. Great Southern Fireproof Hotel Co.,* 86 Fed. 370, 30 C. C. A. 108; *Perrault v. Shaw,* 69 N. H. 180, 76 Am. St. 160, 38 Atl. 724; *Mallory v. La Crosse Abattoir Co.,* 80 Wis. 170, 49 N. W. 1071.)

The entire chapter 226, Laws of 1911, is violative of the fourteenth amendment to the federal constitution. (*Rogers-Ruger Co. v. Murray, supra.*)

The vice in sec. 9, chap. 226 of the 1911 Laws, is the same as that which caused the Wisconsin statute to be held unconstitutional in the above case. The two sections are substantially the same in their imposition of an arbitrary liability upon the owner or purchaser of timber products.

C. L. Heitman, *Amicus Curiae.*

Chapter 226, Sess. Laws, 1911, is unconstitutional, in that it deprives certain persons, affected by said statute, of property without due process of law, and is, therefore, in conflict with sec. 1, art. 14, amendment to federal constitution, and sec. 13, art. 1, Idaho constitution. (*Barbier v. Connolly,* 113 U. S. 27, 5 Sup. Ct. 357, 28 L. ed. 923; *Davidson v. New Orleans,* 96 U. S. 97, 24 L. ed. 616.)

"To authorize A, through the agency of a subcontractor, to impose an arbitrary, unjust and absolute liability upon B, without his default, and contrary to the expressed stipulations

in the written agreement between them, and without any notice that will enable him to protect himself against such liability, and without his violating any statute or any law, or committing any tort or wrong, is certainly to deprive B of his property, or rights of property, without due process of law and to deprive him of the equal protection of the laws.'' (*King v. Hayes,* 80 Me. 206, 13 Atl. 882; *Ulman v. Mayor,* 72 Md. 587, 20 Atl. 141; *Garvin v. Daussman,* 114 Ind. 429, 5 Am. St. 637, 16 N. E. 826; *Oregon Ry. & Nav. Co. v. Smalley,* 1 Wash. 206, 22 Am. St. 143, 23 Pac. 1008; *Catril v. Union Pac. R. Co.,* 2 Ida. 576, 21 Pac. 416.)

The article of the constitution is a restraint on the legislative as well as on the executive and judicial powers of the government and cannot be so construed as to leave the legislature free to make any process of law due process of law by its mere will and pleasure. (*Den v. Hoboken Land & Imp. Co.,* 18 How. (U. S.) 272, 15 L. ed. 372; 5 Notes on U. S. Rep. 575; *Spry Lumber Co. v. Sault Sav. Bank & Trust Co.,* 77 Mich. 199, 18 Am. St. 396, 43 N. W. 778, 6 L. R. A. 204; *Chicago etc. R. Co. v. Chicago,* 166 U. S. 226, 17 Sup. Ct. 581, 41 L. ed. 979, and cases cited.)

The furnishing of the supplies would contribute only in an indirect manner to the securing or obtaining of the timber products. (*Perrault v. Shaw,* 69 N. H. 180, 76 Am. St. 160, 38 Atl. 724; *Meyer v. Berlandi,* 39 Minn. 438, 12 Am. St. 663, 40 N. W. 513, 1 L. R. A. 777.)

''A mechanic's lien is not acquired by mere completion of a building, but there must be the filing of a claim of lien. Until this is done, no lien is acquired either upon the building or the land.'' (*Kern v. San Francisco Co.,* 19 Cal. App. 157, 124 Pac. 862, citing *Humboldt Lumber Mill Co. v. Crisp,* 146 Cal. 686, 106 Am. St. 75, 81 Pac. 30, 2 Ann. Cas. 811; *Presbyterian Church v. Stettler,* 26 Pa. 246; *Wood v. Wilmington Conference Academy,* 1 Marv. (Del.) 416, 41 Atl. 89; *Coddington v. Hudson County Dry Dock etc. Co.,* 31 N. J. L. 477.)

''There is no lien for labor done or material furnished until notice has been filed in the proper office of the proper county, as required by the statute.'' (*Fleming v. Greener,* 173 Ind.

260, 140 Am. St. 254, 87 N. E. 719, 90 N. E. 72, 21 Ann. Cas. 959.)

In the case of a contractor getting out timber products under a contract with the owner of the same, the furnisher of supplies, under the general rule of law, should be affected with notice of the terms of the contract, and be bound accordingly. (*Dingley v. Greene,* 54 Cal. 333; *Wilson v. Barnard,* 67 Cal. 422, 7 Pac. 845.)

AILSHIE, C. J.—The appellant commenced this suit on six alleged causes of action which had been assigned to him, and on a seventh in his own favor. A demurrer was sustained to each cause of action and judgment of dismissal was entered, and this appeal was thereupon prosecuted.

One Lee Decker was employed by respondent to take 13,655 railroad ties from where they were stacked on respondent's right of way and remove them a few hundred feet and load them on to respondent's cars. In doing the work involved in this contract, Decker employed six men and secured groceries and supplies from appellant for the use of himself and men while doing this work. Decker appears to have failed to pay his men. The men thereupon and within the statutory time filed liens under the provisions of sec. 5125 of the Revised Codes. Respondent contends, and the trial court agreed with it, that this statute does not contemplate or provide a lien of the kind here sought to be enforced.

Section 5125 provides as follows: "Every person performing labor upon, or who shall assist in obtaining or securing, saw-logs, spars, piles, cordwood, or other timber, has a lien upon the same for the work or labor done upon, or in obtaining or securing the same, whether such work or labor was done at the instance of the owner of the same or his agent. The cook shall be regarded as a person who assists in obtaining or securing the timber herein mentioned."

It must be remembered that this statute is written in the disjunctive and that the lien contemplated is given to "every person performing labor upon . . . . saw-logs, spars, piles, cordwood, or other timber" as well as to "every person . . . .

who shall assist in obtaining or securing" any of the property mentioned. In other words, the same lien is given to one for *"performing work upon"* any of the property enumerated as is given to one who *"assists in obtaining or securing"* any such property. This court adopted this same course of reasoning in construing sec. 5110, Rev. Codes, in *Hill v. Twin Falls Land & Water Co.*, 22 Ida. 274, 125 Pac. 204. This work was undoubtedly done *upon* these ties in removing and loading them; it was work done about, concerning, in respect to, or with reference to these ties. There is little room for doubt but that railroad ties are timber and fall within the enumeration of "other timber" as used in sec. 5125, *supra.* As authority in point and supporting this view, see *Forsberg v. Lundgren,* 64 Wash. 427, 117 Pac. 244.

We think the word "timber" as here used refers to any kind of timber as it may be taken from the forest, whether in a prepared state for the use to which it is to be applied or in the natural and unfinished condition. For example, cordwood is enumerated preceding the use of the words "or other timber," and yet cordwood is not a manufactured article. On the other hand, "spars and piles" are enumerated and signify specially prepared pieces of timber for definite purposes. It would be extremely technical and strict to construe the statute as not giving a lien for work upon or in securing ties.

In this case it is alleged that after the ties were loaded on the cars the railroad company eloigned them and scattered them along its right of way in the states of Washington, Idaho and Montana and rendered it impossible for the claimants to identify them or foreclose their lien thereon, and appellants seek personal judgments against the company for damages under the provisions of sec. 5140, Rev. Codes. That section provides as follows:

"Any person who shall injure, impair, or destroy, or who shall render difficult, uncertain or impossible of identification, any saw-logs, spars, piles, cordwood, or other timber, upon which there is a lien as herein provided, without the express consent of the person entitled to such lien, shall be liable to the lienholder for the damages to the amount secured by his

lien, which may be recovered by civil action against such person."

It will be observed that the foregoing section 5140 applies to any person who shall injure, impair or destroy or shall render uncertain, difficult, or impossible of identification any of the property on which a lien exists under sec. 5125. The objection that sec. 5140 of the Rev. Codes, as originally enacted and found in the 1899 Sess. Laws, p. 188, is unconstitutional and in violation of sec. 16, art. 3 of the state constitution, is without merit, for the reason that this section was subsequently incorporated in the Revised Codes and was adopted as a part of the entire body of the revised statutes and as a part of the complete code of laws of the state. It is now too late to raise the sufficiency of the title to a statute originally adopted prior to the date of the adoption of the Revised Codes, where such statute has been incorporated in the general code of laws. (36 Cyc. 1068; *Central of Georgia Ry. Co. v. State,* 104 Ga. 831, 31 S. E. 531, 42 L. R. A. 518; *Kennedy v. Meara,* 127 Ga. 68, 56 S. E. 243, 9 Ann. Cas. 396; *Christopher v. Mungen,* 61 Fla. 513, 55 So. 273.)

Lastly, it is argued that sec. 5140 of the Rev. Codes is unconstitutional and void, for the reason that it is violative of sec. 1 of the fourteenth amendment to the federal constitution, and of sec. 13, art. 1, of the state constitution in that it deprives respondent of its property without due process of law and denies to it the equal protection of the laws. We do not think this objection is well founded. In the first place, under this statute, there is no liability against one who injures, destroys or removes such property, unless there is an existing lien thereon. The statute creates the lien. It specifies the kind of a contract and transaction and the conditions under which a laborer will be entitled to a lien. Whenever, therefore, the owner or purchaser of or contractor for property falling within the purview of this statute employs a laborer or enters into a contract which comes within the terms of the statute, the law at once becomes operative and gives to the party rendering the services or performing the labor a lien. This lien exists by operation of law for the period of

sixty days. At the expiration of that time, the lien lapses and ceases to exist, unless in the meanwhile the claimant has complied with the provisions of the statute requiring the filing of a written notice of his lien claim, setting forth the facts required to be shown by the statute. If the lien claimant complies with this statute, the lien continues in force from the time of its inception, namely, when he commenced work until the claim is paid or the lien is foreclosed. Under this statute, it is not a question of the lien arising at the time the notice of lien is filed with the proper county official and of the lien relating back to the time the work commenced. There is no such thing under this statute as a lien relating back. The lien arises with the commencement of work and is created by statute, and its continuance beyond sixty days is conditional upon the claimant doing the thing required by the statute.

Now, as for the contention that the statute is void because of being arbitrary, we fail to see wherein this contention contains any merit. The court will first determine whether the claimant was entitled to a lien, and after that fact has been determined, the damages sustained by the lien claimant by reason of eloignment of the property must be determined and assessed in the same way that damages would be determined and assessed in any other case. The fact that this statute may impose an extra burden and hardship upon the owner of the property in that it requires him to ascertain whether any liens exist against the property before removing it, is not a sufficient ground for holding the statute unconstitutional and void. That might be a good argument to present to the lawmaking body, and it might furnish a reason or justification for the legislature making some exceptions in the law, but they have not done so and the court would not be justified in doing so. It is certainly within the power of a railroad company, a lumber company, or of an individual to ascertain whether laboring men have been paid before settling with the contractor, and if they fail to do so, they must assume the consequent burdens and obligations which arise under the statute. The law, therefore, undertakes to render a person

who injures, destroys, impairs or removes the property on which such lien exists liable for the amount of the claim held against the property, or, if the property be of less value than the lien claim, then it allows the claimant the damages which he has sustained by reason of the removal or destruction of the particular property. There is nothing unusual or oppressive about such a statute. The statute might make such a person guilty of a crime, as it does in case of removal of personal property covered by a chattel mortgage. Under the statute, no penalty attaches to the person doing the thing, unless he first violates the statute which prohibits him injuring, impairing, destroying, or removing any such property. If he does this thing, then he is subject to the penalty which may be recovered in a civil action against such person.

The argument advanced that a railroad company would be liable for receiving and shipping ties or other timber product until it can first determine and ascertain whether there are any liens on the property, is unsound. The statute has no application to any such transaction; a common carrier receiving and transporting freight in due course of business would not be liable for impairing, destroying or rendering uncertain or impossible of identification any property on which there is a lien. It does not seem possible that the *mere constructive* notice which the statute imparts would extend beyond the party first removing or disturbing the property. In other words, the liability is not one that would attach to every subsequent purchaser, bailee or carrier of the property.

This brings us to a consideration of the seventh cause of action which involves the validity and constitutionality of chap. 226 of the 1911 Session Laws (1911 Sess. Laws, p. 727). It is argued by counsel that section 1 of this act violates sec. 1, art. 14, of the federal constitution and sec. 13 of art. 1 of the state constitution. Sec. 1 of chap. 226 of the 1911 Session Laws provides as follows:

"Every person, firm, company or corporation selling or furnishing supplies, groceries, feed or other necessaries to any contractor, boarding-house keeper or other person, firm or corporation to be used upon and while such contractor, board-

ing-house keeper or other person, firm or corporation, or the employer of such contractor, boarding-house keeper or other person, firm or corporation is engaged in obtaining, securing, cutting or manufacturing saw-logs, spars, piles, cordwood, ties or lumber, has a lien upon the same for the value of the supplies, groceries, feed or other necessaries so furnished."

Section 2 provides for filing a notice of lien, and the remaining sections provide the procedure to be followed, while section 9, being the last section of the act, provides that, "Any person who shall injure, impair or destroy, or who shall render difficult, uncertain or impossible of identification, any saw-logs, spars, piles, cordwood, ties or lumber upon which there is a lien, as herein provided, without the written consent of the person entitled to such lien, shall be liable to the lien-holder for the damages of the amount secured by his lien, together with treble damages which may be recovered by civil action against such person."

We have examined this statute with unusual care and have considered the authorities cited, both in support of and opposition thereto, and over and above all this have considered what must be the practical workings and effect of this statute. We are not going to review authorities here but shall rather briefly state some of the reasons which have led us to reach the conclusion hereafter to be stated.

Lien laws rest on two cardinal principles: First, that the owner of the property on which the lien is claimed has received some benefit or advantage by reason of the service rendered or material or supplies furnished; and, second, that the owner has contracted with someone, who thereby becomes his agent, to render such service or furnish such material or supplies. The statute under consideration, as may be seen from an examination of section 1, above quoted, runs counter to both these principles of lien laws. It attempts to create a lien irrespective of contract and without regard to any benefit either direct or remote which the owner of the property may have received from the supplies furnished. It furnishes the owner of the property no notice and affords him no method of protecting himself against any such claim, and

charges him with a claim which may equal or exceed the value of the property although he.has paid the contract price to the men who actually did the labor. In these respects, it undoubtedly has the effect of taking property without due process of law. When the owner of property makes a contract to have work done on such property, he presumably contracts to pay the full value of such work, and he certainly cannot foresee what groceries, feed and supplies the contractor or laboring men may purchase or need in course of the performance of such work. Men must eat and teams must be fed whether they be working or not, and to charge a property owner or one having building done or material furnished with all the "supplies, groceries, feed or other necessaries" which the contractor or any of his men may purchase and use during the performance of such work without giving or serving any notice thereof on the person to be charged would certainly be taking the property of one man and giving it to another without "due process of law" and without affording the party "the equal protection of the law." No process is "due process" which does not give notice, either actual or constructive, and no "taking of property" for debt is lawful unless the debt has been created with the knowledge and consent of the debtor. This knowledge and consent may be constructive so far as it is necessary to create a charge against property, but the statute which furnishes the constructive notice must provide process by which the claims may be measured and established so the property owner may have a ready and certain method of knowing or ascertaining his liability. No such method is furnished by the statute under discussion. There is no means afforded for the property owner to learn who has furnished groceries, supplies or necessaries to the contractor or men until after his liability has attached for laborers and materialmen's liens if he has not in the meanwhile paid them in full. If this statute should be upheld in its present condition, its enforcement would subject the owner of the property on which the lien is claimed to double and possibly treble liability for the work performed or materials furnished.

We conclude that chapter 226 of the 1911 Session Laws is invalid and void, for the reasons above set forth.   The following authorities are in point upon the legal principles here involved and hold to the effect above suggested: *Davidson v. New Orleans,* 96 U. S. 97, 24 L. ed. 616; *Rogers-Ruger Co. v. Murray,* 115 Wis. 267, 95 Am. St. 901, 91 N. W. 657, 59 L. R. A. 737; *Perrault v. Shaw,* 69 N. H. 180, 76 Am. St. 160, 38 Atl. 724; *Meyer v. Berlandi,* 39 Minn. 438, 12 Am. St. 663, 40 N. W. 513, 1 L. R. A. 777; *Chicago etc. R. Co. v. Chicago,* 166 U. S. 226, 17 Sup. Ct. 581, 41 L. ed. 979; *Spry Lumber Co. v. Sault Sav. Bank & Trust Co.,* 77 Mich. 199, 18 Am. St. 396, 43 N. W. 778, 6 L. R. A. 204; *Bielenberg v. Montana etc. Ry. Co.,* 8 Mont. 271, 20 Pac. 314, 2 L. R. A. 813; *Catril v. Union Pac. R. Co.,* 2 Ida. 576, 21 Pac. 416.

The judgment in this case will be reversed as to the first six causes of action prosecuted under section 5125, Rev. Codes, and this case is remanded, with direction to the trial court to overrule the demurrer thereto, and the judgment is affirmed as to the seventh cause of action prosecuted under chap. 226 of the 1911 Sess. Laws.   Appellant will be awarded six-sevenths of the taxable costs of this appeal.

SULLIVAN, J., Concurring in Part and Dissenting in Part. I concur in the conclusion reached by Chief Justice Ailshie to the effect that sec. 1 of chap. 226 of the Session Laws of 1911, p. 727, is unconstitutional and void, in that it undertakes to deprive one of property without due process of law; and I dissent to that part of Chief Justice Ailshie's opinion wherein he holds that the plaintiff and his assignors have a valid lien upon said ties for loading them on the cars after they had been manufactured and delivered to the railroad company upon their right of way.   All of the work performed upon said ties was done and the ties delivered as a finished timber product, to the respondent.   Sec. 5125 provides that "every person performing labor upon, or who shall assist in obtaining or securing, saw-logs, spars, piles, cordwood, or other timber, has a lien upon the same for the work or labor done upon, or in obtaining or securing the same."   The legislature

in enacting that section did not have in view, and did not intend to provide for, a lien upon the timber products there referred to, for work and labor upon them after they had been delivered to the owner as finished products.

In this case, all of the work required to complete the ties had been done and the ties delivered to and placed upon the right of way of the defendant. The respondent and his assignors were employed by a person who had a contract with the railroad company to place said ties upon the cars for distribution along the company's railway lines. They began their work about November 13, 1912, and completed it about December 10, 1912. Thereafter, on January 14, 1913, thirty-five days after they had completed loading the ties, and after the railroad company had moved said ties out of the state, they filed their liens. The railroad company had transported said ties out of the state before the lien was filed, and innocently so, and as I view it, it would be an outrage upon justice to permit the plaintiff to penalize the defendant in three times the value of the wages sought to be recovered, under the facts of this case. It is a monstrous proposition to me to hold that one who loads on the cars certain timber that has been manufactured and delivered to the railroad company for transportation can compel the railroad company to hold the material for thirty-five or sixty days in order to permit him to file a lien.

The clear intent of the legislature in enacting said section 5125 was to give a lien for labor performed in the woods and logging camps, upon timber products before they were delivered as completed products to the owner.

After these ties had been delivered to the company, there was no other labor required to obtain or secure them. The respondent had already "obtained and secured" them. The labor for which appellant claims a lien here was performed subsequently to the time the ties were obtained and secured by the respondent. The respondent and his assignors merely took the ties and placed them on the cars for shipment after they had been "obtained and secured" and delivered into the possession of respondent and piled on its right of way by

other parties. Those ties were in the possession of the respondent and were completed timber products before the appellant performed any labor in connection with them.

If the legislature had desired to give a lien to those who performed labor in loading ties upon the cars, they might have done so; but as I view it, they have not attempted to do that. They were simply attempting to give a lien for the work done in procuring the finished timber products mentioned in said section and delivering them to the owner.

In states having statutes similar to ours, such statutes are regarded as timber lien statutes enacted for the purpose of protecting laborers who produce the finished product, such as cordwood, saw-logs, ties, etc.,—those who work in the woods and those who deliver such products, after they are finished, to the owner. (See Jones on Liens, secs. 702–730.) This intent is clearly shown by the phraseology of the statute providing a lien for all those who shall "perform labor upon," etc., enumerating only the raw products of the woods and the products that are produced in the woods, such as "spars, piles, cordwood or other timber products." The last part of said section, to wit, "the cook shall be regarded as a person who assists in obtaining or securing the timber herein mentioned," clearly shows that said statute was intended only to secure those who worked in the woods or in hauling such products to the place where they were to be delivered to the owner.

Under the construction of the provisions of said statute by the majority, railroad construction men who lay these ties in the roadbed and the cooks who prepare their food assist in "obtaining or securing" them. Unless the cooks and tie-layers, and even those who furnished supplies to the railroad construction camps in which these men were working, were paid immediately and simultaneously with the laying of each tie, where the ties were secured from different places and laid indiscriminately, they would be entitled under the construction of the statute to an action for damages against the railway company for commingling the ties and impairing their liens. The legislature could not have intended to thus

cripple business operations, without requiring each person to notify the company as soon as the work was done that he had not been paid for his labor.

Certainly none of the labor performed by the appellant and his assignors was performed upon said ties, according to the allegations of the complaint, before they were completed ties and delivered to the possession of the respondent, and the respondent in no manner assisted in "obtaining or securing" said ties, within the meaning of those words as used in said statute. It is true the appellant alleges in third paragraph of his complaint that he "performed labor upon and assisted in obtaining and securing said railroad ties," while the other allegations of the complaint clearly show that that statement is false and that they did nothing toward "obtaining and securing" said ties.

All over the timber country in the north men have contracts for placing logs, cordwood and lumber upon cars for the purpose of shipping them to different points in the state or out of the state, and the legislature never intended to give a lien, by the provisions of the laborer's lien law, to persons who place such finished timber products upon the cars for shipment after they have been delivered to the owner. Is it possible or probable that it was intended to give a lien to persons who are employed to load lumber upon a car for shipment out of the state; that such persons have sixty days in which to file a lien, when it is well known by those who load the lumber that it is to be shipped immediately to other parts of the state or out of the state? And if the owner ships the lumber, that he is penalized in three times the value of the labor? The legislature never intended said lien law should be applied so as to cripple business, as will be done by the construction placed upon the statute by the majority of the court. The action of the trial court in sustaining the demurrer in this case ought to be affirmed.

STEWART, J., Dissenting.—I dissent from the majority of the court in their two opinions upon the question that sec. 1, chap. 226 of the 1911 Sess. Laws (p. 727) violates sec. 1,

art. 14 of the federal constitution and sec. 13 of art. 1 of the state constitution.

Section 1 provides: "Every person, firm, company or corporation selling or furnishing supplies, groceries, feed or other necessaries to any contractor, boarding-house keeper or other person, firm or corporation to be used upon and while such contractor, boarding-house keeper or other person, firm or corporation, or the employer of such contractor, boarding-house keeper or other person, firm or corporation is engaged in obtaining, securing, cutting or manufacturing saw-logs, spars, piles, cordwood, ties or lumber, has a lien upon the same for the value of the supplies, groceries, feed or other necessaries so furnished."

In this case one Decker was employed by respondent to take railroad ties from where they were stacked on respondent's right of way and remove them a few hundred feet and load them on to respondent's cars. In doing the work involved in the contract, Decker employed men and secured groceries and supplies from appellant for the use of himself and men while doing the work. He failed to pay the men, and the men, within the statutory time, filed liens under the provisions of sec. 5125, Rev. Codes. Respondent contends, and the trial court agreed with him, that this statute does not contemplate or provide for a lien of the kind here sought to be enforced.

In connection with this section it is clear that chap. 226 of the Sess. Laws of 1911 has no repealing clause and is not an amendment of sec. 5125. It will· be observed by comparing these two sections that sec. 1 of chap. 226 does not contain "every person performing labor upon," which is incorporated in sec. 5125, but does provide "every person, firm, company or corporation selling or furnishing supplies, groceries, feed or other necessaries to any contractor, boarding-house keeper or other person, firm or corporation to be used upon and while such contractor, boarding-house keeper or other person, firm or corporation . . . . is engaged in obtaining"; then follows the rest of the quotation above given from sec. 1.

It will thus be seen that sec. 1 contains a provision, "Every person, firm, company or corporation selling or furnishing supplies, groceries, feed or other necessaries, to any·contractor, boarding-house keeper or other person, firm or corporation to be used upon and while such contractor, boarding-house keeper or other person, firm or corporation . . . . is engaged in obtaining," and that chap. 226, 1911 Session Laws, does not repeal sec. 5125, Rev. Codes, specifically or by implication, and is not repugnant to such section.

The two legislative acts are not repugnant to or in conflict with each other, but the one last passed is the latest expression of the legislature upon the creation of a lien for selling or furnishing supplies, groceries, feed or other necessaries to any contractor, boarding-house keeper or other person or corporation to be used upon and while such contractor, boarding-house keeper or other person, firm or corporation *is engaged in obtaining*, etc. So these two acts are the same in effect, except the provisions in sec. 1 of chap. 226 as to furnishing merchandise · such as groceries, feed and other necessaries to be used while the contractor is engaged in obtaining, etc. This is not found in sec. 5125. That section provides for a lien for the work and labor upon or in obtaining or securing saw-logs, etc. If both acts by any reasonable construction can be construed together, both should be sustained. (36 Cyc., pp. 1073–1079.)

This same author announces what we think is the true rule on p. 1077: "When two· statutes cover, in whole or in part, the same subject matter, and are not absolutely irreconcilable, no purpose of repealing being clearly shown, the court, if possible, will give effect to both. Where, however, a later act covers the whole subject of earlier acts and embraces new provisions, and plainly shows that it was intended, not only as a substitute for the earlier acts, but to cover the whole subject then considered by the legislature, and to prescribe the only rules in respect thereto, it operates as a repeal of former statutes relating to such subject matter, even if the former acts are not in all respects repugnant to the new act. But in order to effect such repeal by implication, it must appear

that the subsequent statute covered the whole subject matter of the former one, and was intended as a substitute for it. If the later statute does not cover the entire field of the first and fails to embrace within its terms a material portion of the first, it will not repeal so much of the first as is not included within its scope, but the two will be construed together, so far as the first still stands.''

This rule is also followed by this court in the case of *People v. Lytle,* 1 Ida. 143.

This subject is annotated by the author in the quotations given from Cyc., and most of the courts in the different states of the Union have followed the rule quoted above, and we believe that such rule should be adhered to by this court. It has been approved by this court.

In the case of *Phillips v. Salmon River Min. & Dev. Co.,* 9 Ida. 149, 72 Pac. 886, this court, in construing a laborer's lien as it existed at that time, announced the rule that ''the provisions of our lien laws must be liberally construed with a view to effect their objects and promote justice,'' and we think the general rule above stated is the correct rule and should be applied in the construction of a statute of the character involved in this case.

In the case of *Empire Copper Co. v. Henderson,* 15 Ida. 635, 99 Pac. 127, this court held that in construing an act of the legislature the court should ascertain and give effect to the legislative intent where that can be ascertained; but where the language of an enactment is clear and specific as to the subjects upon which a lien is provided for, then the court cannot assume that the legislature included subjects not mentioned in the language of the act, but must accept the act as formulated and adopted by the legislature. (See *Holmberg v. Jones,* 7 Ida. 752, 65 Pac. 563; 36 Cyc. 1107; *Idaho Mutual Co-operative Ins. Co.* v. *Myer,* 10 Ida. 294, 77 Pac. 628.)

In the case of *Mara v. Branch* (Tex. Civ.), 135 S. W. 661, the court of appeals of Texas, in dealing with merchandise, defines the same as follows: '' 'Merchandise' is a term of very extended meaning, and usually conveys the idea of personalty

used by merchants in the course of trade. It may as a fact include *every article of traffic.*''

In the case of *Ensign v. Coffelt,* 102 Ark. 568, 145 S. W. 231, the supreme court of Arkansas, in construing a statute which makes void notes given in ordinary form for the price of patented machines, etc., holds that it shall not extend to merchants and dealers who sell patented things in the usual course of business; the words ''merchant'' and ''dealer'' meaning persons engaged in the business of buying and selling merchandise or other personal property in the usual course of trade.

Sutherland on Statutory Construction, vol. 2, sec. 363, lays down the rule of law as follows:

''The intent is the vital part, the essence of the law, and the primary rule of construction is to ascertain and give effect to that intent. The intention of the legislature in enacting a law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. . . . . Intent is the spirit which gives life to legislative enactments. In construing statutes, the proper course is to start out and follow the true intent of the legislature and to adopt that sense which harmonizes best with the context and promotes in the fullest manner the apparent policy and objects of the legislature.''

The rule is generally recognized, by the authorities to be that where a statute enumerates the things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned; *expressio unius exclusio alterius.* (*Perkins v. Thornburgh,* 10 Cal. 189; *Smith v. Randall,* 6 Cal. 47, 65 Am. Dec. 475.)

In the case of *In re Hull,* 18 Ida. 475, 110 Pac. 256, this court held and stated on p. 279: ''We enter upon the consideration of this statute fully conscious of the duty which rests on the court to ascertain what the law is on the subject, and to declare it as we find it rather than as we think it ought to have been. We have no right to add to or take from the law.''

The court cannot speculate upon the intent of the legislature, but must accept the interpretation of the act as it appears therein.    This rule is discussed and determined in the case of *Empire Copper Co. v. Henderson,* 15 Ida. 635, 99 Pac. 127; *Holmberg v. Jones,* 7 Ida. 752, 65 Pac. 563.

The language used in chap. 226, Session Laws 1911, sec. 1, when read as an entirety, is clear and would seem to furnish its own interpretation, in designating the property upon which liens may be filed by certain persons, firms and corporations for supplies, groceries, feed or other necessaries sold or furnished to any contractor, boarding-house keeper or other person, firm or corporation *to be used upon and while* such contractor, boarding-house keeper or other person, firm or corporation, or the employer of such contractor, boarding-house keeper or other person, firm or corporation is engaged in *obtaining, securing, cutting or manufacturing* saw-logs, spars, piles, cordwood, ties or lumber.

If the language used in chap. 226, 1911 Sess. Laws, sec. 1, is unconstitutional, then it results in discrimination against the merchant and salesman or the producer of feed and sustenance who is engaged in selling or furnishing supplies, groceries, feed or other necessaries to any contractor, boarding-house keeper, or other person or corporation, to be used upon and while such contractor, boarding-house keeper or other person, firm or corporation is engaged in obtaining, etc., as without the furnishing of such supplies to the men who are doing the labor in obtaining, securing, cutting or manufacturing saw-logs, spars, piles, cordwood, ties or lumber by such merchants or salesmen, such employees so engaged would be deprived of the necessaries of life and would be unable to live without such supplies, and the man who provided them, under the provisions of the statute in question, is justified in claiming a lien, and the statute should not be held void.

I therefore hold that chap. 226, 1911 Sess. Laws, is not in violation of the constitution.    Neither is the act beyond the power vested in the legislature in enacting laws providing for mechanics' liens either for laborers engaged in obtaining, securing and cutting or manufacturing saw-logs, spars, piles,

cordwood, ties or lumber, or for every person, firm, corpora-
tion, or company *selling or furnishing supplies, groceries, feed
or other necessaries to any contractor, boarding-house keeper
or other person, firm or corporation, or the employer of such
contractor, boarding-house keeper or other person, firm or cor-
poration engaged in obtaining, securing, cutting or manufac-
turing saw-logs, spars, piles, cordwood, ties or lumber. . .*

My conclusion in this case is that chap. 226 is not uncon-
stitutional, and should be sustained by this court, and that
a judgment should be entered in this case accordingly.