STATE EX REL. GLASGOW, RESPONDENT, v. HEDRICK, APPELLANT.

(No. 6,743.)

(Submitted November 15, 1930. Decided December 19, 1930.)

[294 Pac. 375.]

*Mr. H. C. Crippen,* for Appellant, submitted a brief.

*Mr. Guy C. Derry* and *Mr. Paul B. Bowen,* for Respondent, submitted a brief; *Mr. Derry* argued the cause orally.

554

MR. JUSTICE GALEN delivered the opinion of the court.

This is a bastardy proceeding. Upon issues joined the cause was, on February 24, 1930, tried as a civil action to a jury which returned a verdict finding the defendant guilty. The court thereupon entered judgment requiring the defendant to pay to the clerk of the court, commencing March 1, 1930, the sum of $18 per month for the support of the child, and awarding costs to the plaintiff. The defendant's specifications of error present two questions for decision, viz.: (1) Did the court have jurisdiction to try the case; and (2) did the court err in refusing to give an instruction tendered or one of similar import as to the effect of an agreement of settlement signed by the relatrix?

1. It is argued by the defendant that the court was without jurisdiction because the statutes on bastardy, though

civil in nature, are embraced in the Penal Code, the contention being that since our bastardy procedure is civil in nature, it has no place in the Penal Code, and is therefore unconstitutional.

Counsel for appellant relies upon a decision of the Supreme Court of Washington, *State* v. *Tiemen,* 32 Wash. 294, 98 Am. St. Rep. 854, 73 Pac. 375, in which it was held that in an Act relating only to crimes and punishments and proceedings in criminal cases there could not be anything of a civil nature embraced in the body of the Act; and that since the bastardy statute of Washington was essentially civil in nature, it was not a valid enactment. That decision is based fundamentally upon the ground that the title of the Act was not sufficiently comprehensive to include anything of a civil nature. It has no application in the condition of Montana's statutory law. Neither is the case of *Skaggs* v. *State,* 24 Ariz. 191, 207 Pac. 877, in point here. It is true that our Codes are divided into four parts, i. e.: (1) Political, (2) Civil, (3) Civil Procedure, and (4) Penal, and that in the enactment of the Penal Code it is provided that the "Act shall be known as the Penal Code of Montana, and is divided into three parts, as follows: Part I. Crimes and Punishments. II. Criminal Procedure. III. Penal and Reformatory Institutions." (Sec. 10708, Rev. Codes 1921.) However, our Revised Codes of 1921, embracing a Political Code, a Civil Code, a Code of Civil Procedure, and a Penal Code, were not separately enacted or adopted, but all were adopted in the one Act, as constituting the main body of our statutory laws (Chap. 54, Laws of 1925); and as originally adopted, provision was made that the four codes must be construed as though all were passed at the same moment of time, "and were parts of the same statute." (Sec. 5161, Pol. Code 1895.) The statutes relating to bastardy, now embraced in sections 12267 to 12274, inclusive, of the Revised Codes of 1921, were merely carried forward and placed in the Penal Code by the Code Commissioner as a matter of classification and convenience. No change or amendment to them has been

made since the adoption of our Codes in 1895. In this condition of our statutory law the defendant's position is untenable. (*Anderson* v. *Great Northern Ry. Co.*, 25 Idaho, 433, Ann. Cas. 1916C, 191, 138 Pac. 127; *Central of Georgia Ry. Co.* v. *State*, 104 Ga. 831, 42 L. R. A. 525, 31 S. E. 531.)

2. It appears that after the prosecutrix knew that she ▮ was pregnant she had some negotiations with the defendant which resulted in her signing a receipt which was prepared by the defendant's attorney, reading as follows:

"Billings, Montana, January 23, 1929.

"Received of E. E. Lofgren, Agent, the sum of $100.00, with the understanding that the further sum of $100.00 is to be paid on or before the 23d day of February, 1929, the said sum of 'Two Hundred Dollars ($200.00) to be in full and complete settlement and satisfaction of any and all claims, demands, accounts, damages or action that the undersigned may have against Paul Hedrick at the date hereof."

"LEILA GLASGOW."

The prosecutrix, in explaining this receipt, testified: "He told me if I would keep his connection with the case away from the public he would take care of the baby. I agreed and kept my promise to that. * * * I talked with Mr. Hedrick once about my condition before I signed this release, which I admit I signed. At that time he agreed to pay my hospital expenses and take care of the baby provided I would withhold his name. That is all that was said. I told him I would sign it provided it had nothing to do with the baby. * * * I asked him what about the family, and he said he would take care of that later. By family, I meant the baby. He gave me the money, and I paid the doctor and for my care up there [Helena]. He never gave me a dollar more than the Two Hundred dollars which he agreed to give me under the release."

The defendant testified: "I paid her One Hundred dollars and agreed to send her One Hundred more. I thought that would clear me from any involvement hereafter, or anything.

I did not pay her just so she might be taken care of at the hospital. * * * I talked to Miss Glasgow about her condition about the 20th of January. I did that to help out a girl friend. * * * I knew somebody else was responsible for her condition. I saw there was a chance of me being responsible. I was confident that would release me of any claims thereafter. I went and consulted an attorney to provide a way to help her out, because I didn't know how to go about it." And E. E. Lofgren, the attorney who prepared the receipt which was signed by the relatrix, testified that the matter of the care and support of the child to be born was not discussed. The receipt was signed on January 23, 1929, and the child was born on March 11.

In view of such evidence, the defendant proposed an instruction to the jury reading as follows: "You are instructed that the plaintiff was legally competent to contract with the defendant concerning any and all liability both with reference to herself and the care of the unborn child with which she was pregnant. If you find that she accepted from the defendant the sum of $200.00 in settlement of any and all claims concerning her pregnancy or concerning the parentage of said child that she might have against him, then your verdict should be for the defendant even though you should find that he is the father of said child."

Error is predicated upon the refusal of the court to give the jury that instruction, or one of similar import, although the defendant requested the court to do so.

In view of the evidence, it is our opinion that the court did not err in refusing the offered instruction, or in refusing to give one of like substance. The receipt in evidence is not susceptible of construction as a contract to release the defendant from obligation to support the child, and it is manifest that such receipt does not warrant the giving of the instruction.

This case does not present for decision the question of whether a putative father may, by a contract with the

expectant mother, be released from the obligation imposed by section 12273 to support his bastard child.

For the reasons stated the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, FORD and ANGSTMAN concur.