THE STATE OF WYOMING,

*Plaintiff,*

vs.

MARCEL R. PITET,

*Defendant.*

(No. 2527; April 16th, 1952; 243 Pac. (2d) 177)

For the plaintiff the cause was submitted upon the brief of Harry S. Harnsberger, Attorney General, Howard B. Black, Deputy Attorney General, and Paul T. Liamos, Jr., Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument of Mr. Harnsberger.

For the defendant the cause was submitted upon the brief of John F. Raper and R. G. Diefenderfer, both of Sheridan, Wyoming, and oral argument of Mr. Diefenderfer.

## OPINION

ILSLEY, Justice.

The defendant, Marcel R. Pitet, was charged in five counts in an Information filed in the District Court of Sheridan County with the unlawful practice of medicine as defined in Sec. 37-2007 Wyoming Compiled Statutes 1945 and without having first received and recorded a certificate from the State Board of Medical Examiners as provided by Sec. 37-2014 W.C.S. 1945.

Whereupon the defendant demurred to each and every count in the Information upon the ground that his actions did not constitute an offense punishable by the laws of this State for the following reasons: That Sections 37-2007 and 37-2014 W.C.S. 1945 are void, because: Sec. 37-2014 W.C.S. 1945 was first enacted as Sec. 14 of Chapter 18 Session Laws of Wyo. 1899; that as such it was published as Sec. 2202 in Chapter 5—Division 1, Title XVI Revised Statutes of Wyoming 1899; thereafter by Sec. 14 Chapter 45 Session Laws of Wyoming 1905, an attempt was made to amend said

Sec. 2202 to read as set forth in that chapter; then said section was compiled as Sec. 2878 Wyoming Compiled Statutes 1910, and as Sec. 3526 Wyoming Compiled Statutes 1920 but thereafter it was amended and re-enacted as Sec. 5 of Chapter 126 Session Laws of 1925, and which was compiled as Sec. 86-114 Wyoming Revised Statutes 1931; that as such Sec. 86-114 it was again amended and re-enacted in Sec. 1 Chapter 24 Session Laws of 1933 to read as it now appears as Sec. 37-2014 Wyoming Compiled Statutes 1945.

Defendant Pitet contends that the attempted amendment and re-enactment of this section, in Sec. 14 Chapter 45 Session Laws 1905 was void for the reason that said chapter was enacted in violation of Sec. 26 of Article III of the Constitution of Wyoming in that the title to the Bill was as follows:

"An Act to amend and re-enact Chapter 5, Division 1, Title XVI Revised Statutes 1899, relating to the State Board of Medical Examiners."

Defendant claims that the Bill as finally enacted into law did not amend and re-enact any of the provisions of existing law as required by the constitutional provision cited.

That Sec. 37-2007 Wyoming Compiled Statutes 1945 was first enacted as Sec. 7 of Chapter 45 Session Laws 1905, has never been amended and is void for the reasons above set forth.

Defendant also claims that Chapter 45 Session Laws 1905, although purporting in its title to be an amending and re-enacting Act, actually was a comprehensive new law attempting to cover the entire field of medical and surgical practice in Wyoming and containing new provision not previously existing, especially Sec. 7 of the Act under which the defendant herein is being prosecuted, and that Chapter 45 Session Laws 1905 violated the provisions of Sec. 24 Art. III of the Constitution in

that *its title* did not clearly express its subject and that the Act embraced more than one subject—(a) The State Board of Medical Examiners; (b) Defining a person practicing medicine; (c) Imposing penalties for practicing medicine, none of which was expressed in the title.

Thereupon the District Court stayed all further proceedings and reserved and sent to this court the following important and difficult constitutional questions which have arisen under defendant's demurrer and objections to trial, as follows:

### I.

"Does Section 37-2014, Wyoming Compiled Statutes 1945, violate the provisions of Section 26 of Article III of the Constitution of Wyoming?

### II.

"Does Section 37-2007, Wyoming Compiled Statutes 1945, violate the provisions of Section 26 of Article III of the Constitution of Wyoming?

### III.

"Did Chapter 45 Session Laws of Wyoming 1905 (now sections 37-2001 to 37-2017, inclusive, Wyoming Compiled Statutes 1945, as amended), violate the provisions of Section 24 of Article III of the Constitution of Wyoming?"

A fourth constitutional question was certified to this court which has since been abandoned and need not now be considered.

Section 26 of Article III of the Constitution of Wyoming referred to in each of the questions numbered I and II submitted to this court provides:

"Laws—How Amended.—No law shall be revised or amended, or the provisions thereof extended by reference to its title only, but so much thereof as is revised,

amended, or extended, shall be re-enacted and published at length."

Section 37-2014 W.C.S. 1945, mentioned in question I, supra, has been on the statute books in one form or another since first enacted as Section 14, Chapter 18 Session Laws 1899, some fifty-three years. This section provides the penalty for practicing medicine or surgery without complying with the law.

Section 37-2007 W.C.S. 1945 referred to in question II, supra, was first enacted as Section 7, Chapter 45 Session Laws 1905, and has never been amended in its forty-seven years on the statute books and is in words as follows:

"Practicing physicians—Defined.—Any person shall be regarded as practicing medicine, within the meaning of this Act (§§ 37-2001, 37-2017), who shall in any manner hold himself out to the public as being engaged within this state in the diagnosis and treatment of diseases or injuries or deformities of human beings; or who shall suggest, recommend or prescribe any form of treatment for the intended palliation, relief or cure of any physical or mental ailment of any person with the intention of receiving therefor, either directly or indirectly, any fee, gift or compensation whatsoever; or who shall maintain an office for the reception, examination and treatment of any person suffering from disease or injury of body or mind; or who shall attach the title of M.D., surgeon, doctor or any other word or abbreviation to his name indicative that such person is engaged in the practice of medicine as hereinafter defined."

These laws are old ones having to do with that ancient and honorable calling known as the medical profession and they assume to regulate the medical practice. It is a serious thing to consider the declaring of such laws unconstitutional. To do so there must be ample and good reason. The objection should be grave. The conflict between the statute and the Constitution should be substantial. The constitutional provision must be reasonably construed with a view of sustaining the legislative

action. If there should remain any doubt as to the constitutionality of the law in question then the court should sustain it. See Cooley—Principle of Constitutional Law, Cooley's Constitutional Limitations Eighth Edition Vol. 1, Chapter 4 of the Construction of State Constitutions. Also Vol. 1, Chapter VI, Title of a Statute, page 291 et seq—50 Am. Jur. 176, Sec. 195; State vs. Hall 27 Wyo. 224, 194 P. 476—in re Fourth Jud. Dist. 4 Wyo. 133, 32 P. 850, in re Boulter 5 Wyo. 329, 40 P. 520.

Reserved questions I and II, for the sake of brevity, will be discussed together.

There was a reasonable purpose and a sensible object in having Section 26, Article III, made a part of the Wyoming Constitution. Its purpose was intended to prevent ill-advised and fraudulent legislation. Perhaps to prevent that which was done by a Roman Emperor who published a law, but it was written in a very small hand and posted up in a corner so no one could make a copy of it. In other words, the constitutional restriction was aimed at the mischief of embracing in the same bill before a legislative body incongruous matters having no relation to each other, or to the subject specified in the title, by which laws were often adopted without attracting attention. Lewis Sutherland Statutory Construction Vol. 1, Sec. 111.

We are of the opinion that Section 26, Article III must be given an interpretation that is reasonable having in mind always the evils that are to be suppressed.

It is set forth in 59 C.J. 866, Sec. 448, that:

"These constitutional provisions have never, in construction, been given a rigid effect, but have been held applicable only to such statutes as come within their terms, when construed according to the spirit of such restrictions, and in the light of the evils to be suppressed. They should receive a reasonable and liberal construction, with the view of upholding the acts of the

legislature, and not unnecessarily hampering or embarrassing it in its work; and the courts will not extend the construction of the prohibition beyond the mischief it was designed to prevent."

In an early case before the Supreme Court of Michigan, the People vs. Mahaney, 13 Mich. 481, 490, 494, 495, that Court had before it "An Act to Establish a Police Government for the City of Detroit." By a section of the act the offices of city marshal and assistant marshal were abolished. Another section provided notices to be served on incumbent officers before new police officers were installed.

Judge Cooley, in an opinion commenting upon similar constitutional provisions in Michigan to the sections 24 and 26 of Article III of the Wyoming Constitution, had this to say:

"It is next objected that the law is invalid because in conflict with section twenty-five of article four of the constitution, which provides that 'no law shall be revised, altered or amended by reference to its title only; but the act revised, and the section or sections of the act altered or amended, shall be re-enacted and published at length.'

"The act before us does not assume in terms, to revise, alter or amend any prior act, or section of an act, but, by various transfers of duties it has an amendatory effect by implication, and by its last section it repeals all inconsistent acts. We are unable to see how this conflicts with the provision referred to. If, whenever, a new statute is passed, it is necessary that all prior statutes, modified by its implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the State would require to be re-published at every session, and parts of it several times over, until, from mere immensity of material, it would be impossible to tell what the law was. If, because an act establishing a police government modifies the powers and duties of sheriffs, constables, water and sewer commissioners, marshals, mayor and justices, and imposes new duties upon the executive and the citizen, it has thereby become necessary to re-enact and re-publish the various laws relating to them all as now modified, we

shall find, before the act is completed, that it not only embraces a large portion of the general laws of the State, but also that it has become obnoxious to the other provisions referred to, because embracing a large number of objects, only one of which can be covered by its title.

"This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not re-published, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent."

Judge Campbell in Underwood vs. McDuffee, 15 Mich. 361, 93 Am. Dec. 194, 195, referring to what was urged as an improper amendment of a prior statute, made this clear-cut observation:

"It is also urged that the statute creating the existing system of references is invalid as not in any proper sense an amendment of the prior statutes, although purporting to be such. The constitution declares that no law shall be amended or altered by reference to its title only, but that the sections altered or amended 'shall be re-enacted and published at length.' The law in question was designed to remodel the entire system of references, and in lieu of several sections of the former statutes, a series of new sections was adopted, each in the room of an old one. The objection pointed out is, that some of the new sections bear no resemblance to those superseded, but relate to a different class of details. We can see no illegality in this. There is no principle which can

prevent the legislature from substituting any provision they please for any other provision, whether cognate or not, if the new section is not foreign to the subject indicated by the title of the law in which it is inserted. There is no other constitutional check that we have been able to discover, and in the absence of any, it certainly belongs to the legislative power to exercise its discretion in the matter."

In Chapter 5, Division 1, Title 16 of the Revised Statutes of Wyoming, 1899, there are eighteen sections of the law set out under the chapter heading, "Board of Medical Examiners—Physicians and Surgeons." Of these sections fourteen mention or refer to the *State Board of Medical Examiners*. Four sections do not. In respect to the law attacked as unconstitutional, the same being Chapter 45, Session Laws of Wyoming 1905, with the title:

"Board of Medical Examiners.

AN ACT to amend and re-enact Chapter 5, Division 1, Title XVI, Revised Statutes of 1899, (relating to the State Board of Medical Examiners)."

This Chapter 45 has seventeen pertinent sections, and of these sections thirteen refer to or mention the Board of Medical Examiners in one way or another. As to the other four sections, while not referring to or mentioning the Board of Medical Examiners, those sections being sections 7, 10, 14 and 16 of said Chapter 45, we consider as germane to the general object of the law as expressed in the aforementioned title and in no way violates either Section 26 or Section 24 of Article III of the Wyoming Constitution.

This court in Re Trent's Claim 68 Wyo. 146 decided May 15, 1951, 231 P. (2d) 180, 185, 186, 187 approves the general rule as set forth in 50 Am. Jur. 184 § 204:

"The general rule is that where the title of an original act sufficiently expresses its subject or object in the manner required by the Constitution, the title of an amendatory or supplementary act may simply refer to

the original act by its title, and declare the new act to be an amendment of or supplement to the original act, where the provisions of the amendatory or supplementary act are germane to, and not inconsistent with, the subject or object expressed in the title of the original act, and could have been included in the original act under its title. An amendment is not regarded as in violation of constitutional provisions as to singleness of subject and sufficiency of title, where it has but one general object and is germane to that general object and to the section which it purports to amend."

In the Trent case the contention was made that a portion of Section 72-106 W.C.S. 1945 was unconstitutional because the title to the 1933 amendment thereof did not obey the requirements of Section 26 of Article III of the Wyoming Constitution and was insufficient and did not comply with Section 24 of Article III of the Wyoming Constitution.

In holding that the arguments and contentions advanced were untenable, this Court cites Board of Commissioners of Laramie County vs. Stone, 7 Wyo. 280, 51 P. 605, 607 and quotes therefrom the following:

" 'It was not intended that the title should be an abstract of all the various provisions that a bill might contain, nor was it intended to prevent the incorporation into a single act of the entire statutory law upon one general subject, but only that every provision must be germane to the subject expressed in the title.'

"The same opinion also uses the following language: 'And it has been—we think, rightly—held that it was not to amendments of general statutes thus consolidated into a code that the section was intended to apply, but it was aimed at the separate acts in their original enactment; that in the case of amendments to a code it is sufficient that the title refer to the chapter and section specifically, and declare the purpose to amend or supplement it.' "

We believe that the statute sought to be amended, i.e. Chapter 5, Division 1, Title XVI Revised Statutes 1899, was properly and sufficiently identified in the title to

Chapter 45 Session Laws Wyoming 1945 as quoted above. See 59 C.J. 817 Sutherland Statutory Construction Section 1909. It is contended that Chapter 45 Session Laws of Wyoming 1905 violates the provision of Section 24 of Article III of the Constitution of Wyoming. That provision is as follows:

"Only One Subject in Bill.—No bill, except general appropriation bills and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject is embraced in any act which is not expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

In Minnesota the legislature of that state enacted a law entitled, "An Act to Establish a Probate Code." It had 21 chapters and 326 sections—and in Johnson vs. Harrison 47 Minn. 575, 577, 578 it was contended that this law was repugnant to that state's Constitution which provided that, "no law shall embrace more than one subject which shall be embraced in its title." Among other things the Minnesota Court had this to say referring to the constitutional provision:

"While this provision is mandatory, yet it is to be given a liberal, and not a strict, construction. It is not intended nor should it be so construed as to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, or by multiplying their number, or by preventing the legislature from embracing in one act all matters properly connected with one general subject. The term 'subject', as used in the constitution, is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical or natural connection. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. All that is necessary is that the act should embrace some one general subject; and by this meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other,

either logically or in popular understanding, as to be parts of, or germane to, one general subject."

"* * * Any construction of this provision of the constitution that would interfere with the very commendable policy of incorporating the entire body of statutory law upon one general subject in a single act, instead of dividing it into a number of separate acts, would not only be contrary to its spirit, but also seriously embarrassing to honest legislation. All that is required is that the act should not include legislation so incongruous that it could not, by any fair intendment, be considered germane to one general subject. The subject may be as comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject, and not several. The connection or relationship of several matters, such as will render them germane to one subject and to each other, can be of various kinds, as, for example, of means to ends, of different sub-divisions of the same subject, or that all are designed for the same purpose, or that both are designated by the same term. Neither is it necessary that the connection or relationship should be logical; it is enough that the matters are connected with and related to a single subject in popular signification. The generality of the title of an act is no objection, provided only it is sufficient to give notice of the general subject of the proposed legislation and of the interests likely to be affected. The title was never intended to be an index of the law."

The Minnesota Court held that tested by these rules the Probate Code, embraced one subject, which was sufficiently expressed in its title, citing Montclair vs. Ramsdell 107 U.S. 147 (2 Sup. Ct. Rep. 391).

In Farm Investment Co. vs. Carpenter 9 Wyo. 110, 132 where

"An Act entitled 'An act providing for the supervision and use of the waters of the State' approved December 22, 1890, provided for the adjudication of rights to the use of the public waters, by the State Board of Control. Held, that the one general subject of the act was the supervision of the waters of the State, and the matter of determination of priorities is a part of the general

subject and germane to it; and that the act was not void, as to such provisions, as containing more than one subject."

It was there argued that the provisions for the "adjudication of water rights" are not included in the word "supervision," but the court in that case cited In Re Fourth Judicial District 4 Wyo. 133 where it was stated: "It is not essential that the title shall specify particularly each and every subdivision of the general subject." If but one general and comprehensive subject is contained in the act, and all of the provisions are germane to that subject, then the act can not be said to violate either the spirit or the letter of the constitutional provision. Again in State vs. Tobin 31 Wyo. 355 this court had before it the contention that a gambling statute was unconstitutional because the amendatory act of Chapter 65 of the Session Laws of 1901, amending a number of sections of the Revised Statutes of 1899, relating to gaming, was in violation of Section 24, Article III of the Wyoming Constitution. It seems that there were two material amendments made, "the first striking out all provisions in regard to licensing the dealing, carrying on and conducting of gambling games and second by striking out the phrase 'Banking games'." This court discusses the question raised at length and holds that the act is not unconstitutional. See pages 361, 362, 363, 364 of State vs. Tobin, supra.

Citing Commissioners vs. Stone 7 Wyo. 280, 291, 36 Cyc. 1029-1031, see State ex Rel. Wyckoff vs. Ross 31 Wyo. 500, 509, 228 P. 636; Tucker vs. State ex Rel Snow 35 Wyo. 430, 450, 251 P. 460; P.S.C. of Wyo. vs. Grimshaw 49 Wyo. 158, 187, 53 P. (2d) 1.

Both plaintiff and defendant cite In Re Gillette Daily Journal 44 Wyo. 226. This court had under consideration the validity of Chapter 85, Session Laws 1931, relating to legal newspapers. The title to that act was as follows: "An Act to amend and re-enact section 1310,

Wyoming Compiled Statutes, 1920, relating to and defining legal newspapers."

It was contended in that case that Section 3 of Chapter 73, Session Laws of 1897—which was carried into the Wyoming Compiled Statutes 1920—since the title of the act made no reference whatever to the provisions of that section, was invalid and in violation of Section 24, of Article III of the Constitution of Wyoming. In holding the Chapter 85, Session Laws 1931 valid, this court used this language:

"The title is broad and sufficient, if we strike out all reference to Section 1310, W.C.S. 1920. The contention that this last named section could not be amended and re-enacted because it itself was invalid is not in our judgment well taken." 44 Wyo. 226, 233 (11 P. (2d) 265).

Defendant assumes because of this last named statement, that we will be obligated to separate the title so to speak, in the instant case by eliminating "Chapter 5, Division 1, Title 16, Revised Statutes 1899," and leaving the words "an act—relating to the State Board of Medical Examiners", which then might be considered as leaving the title insufficient to cover the full subject of the act. We disclaim any such purpose or intention. What was said in the Gillette Daily Journal case is this, "The title is broad and sufficient, if we strike out all reference to Section 1310 W.C.S. 1920." Not that the court actually struck out a part of the title in that case, or was committed to do so in other cases coming before this court in the future.

We desire to call attention to and comment upon the exception set forth in Section 24 Article III, emphasized with italics as follows: "No bill, *except* general appropriation bills, and *bills for the codification and general revision of the laws* shall be passed containing more than one subject, which shall be clearly expressed in its title; * * *"

Codification is defined as: "Codification is the process of collecting and arranging the laws of a country or a state into a code, that is, into a complete system of positive law, scientifically ordered, and promulgated by legislative authority." 7 Words and Phrases 540, 14 C.J.S. 1306.

A general revision of the laws, or of statutes, has been defined as follows:

" 'Revision of the law' on any subject is a restatement of the law on that subject in a correlated or improved form, which is intended as a substitute for the law as previously stated, and displaces and repeals the former laws relating to the same subject and within the purview of the revising statute. It implies a re-examination of the law." People vs. Gould 178 N.E. 133, 144, 345 Ill. 288.

There was a complete *general revision of the laws* of Wyoming coming within the provisions of Section 24, Article III of the Wyoming Constitution by the twentieth and twenty-first legislatures of Wyoming.

Chapter 9 of the Session Laws of Wyoming 1929, made provision for the Supreme Court of Wyoming to appoint a commission of three members; to have authority to revise, compile and edit existing statutes of the State; to make and contract for a revision of the laws; to employ experts to assist in the compilation and revision. The Supreme Court appointed Messrs. C. D. Murane, Thomas Hunter and N. R. Greenfield, able and competent members of the Wyoming Bar, as the commission to edit and make the revision and compilation of the existing statutes of the State of Wyoming. The legislature was careful to see to it that a proper revision of the laws was to be accomplished. It provided in Section 3 Chapter 9, Session Laws, 1929, as follows:

"Before any copies of said statutes shall be printed or sold and delivered, all statutes revised or changed shall be submitted by said Commission to the Legislature of the State of Wyoming for re-enactment. When said Commission shall certify that the laws changed, re-

written or revised have been duly enacted by the Legislature, and when it shall certify that it has examined and compared all the laws of a general nature in force, and that the said revised statutes are complete, and the terms of this Act shall have been complied with, such revised statutes shall be deemed and held to be the revised statutes of the State of Wyoming and evidence in all courts. Such authentication shall be printed in each copy. Thereafter, in any bill to amend or repeal any section thereof contained in the revised statutes, it shall be sufficient to refer to the same by the running section numbers."

It is apparent that the revision commissioners, as stated in their certificate of authentication, now contained on one of the first pages of the volume known as the Revised Statutes, 1931, complied with said section 3 of chapter 9. The legislature of 1931 had presented to it the work of the revision commissioners and then proceeded to pass chapter 73 Session Laws 1931, containing some 57 pages and 184 sections of a comprehensive revision act. It was entitled:

## "REVISION ACT

AN ACT for the codification and general revision of the laws of the State of Wyoming, defining what shall constitute the Revised Statutes of Wyoming, 1931, and revising sundry provisions of existing law; fixing the compensation of the revision commission; and providing for the codification, editing, printing, certification and sale of such revised statutes; and making an emergency appropriation therefor."

We are convinced from a careful reading of said Chapter 73 that the Revised Statutes of 1931 was a complete, comprehensive general revision of the laws of Wyoming complying in all particulars with Section 24, Article III of the Wyoming Constitution.

Without quoting at length from said Chapter 73 we suggest a careful reading of, "Authority of Revision Commission", Sec. 1 of Chapter 73; "Nature of Revision", Sec. 2; "Arrangement of Laws", Sec. 3 and "Leg-

islative Printing and Supplies", Sec. 4. It will readily be seen therefrom that a complete general revision of the laws of Wyoming was contemplated by the Wyoming Legislature.

The Legislature placed the matters about which defendant Pitet complains, by the enactment into law the Revised Statutes 1931, in Chapter 86 thereof, entitled "Physicians and Surgeons", containing Sections 86-101 to 86-117 inclusive. That the Legislature had in mind the medical practice of physicians and surgeons by the Revision of 1931 is evident because by Sec. 52 of Chapter 73 of the Session Laws 1931, Sec. 3524 Wyoming Compiled Statutes 1920, as amended and re-enacted by Sec. 3, Chapter 126, Session Laws of Wyoming 1925 was *revised* and re-enacted, the Sec. 52 referred to having to do with revocations of certificates by the Board of Medical Examiners. Having in mind the foregoing, we have no doubt that the Revised Statutes 1931 was a revision authorized and enacted by the Legislature within the constitutional provisions, providing for the general revision of laws under Section 24, Article III of the Wyoming Constitution.

The question of codifications and revisions is discussed under the title statutes in 59 C.J. 798, § 376, where these statements are made:

"It has been held that a constitutional provision requiring every act to embrace but one subject, to be expressed in its title, does not apply to codifications or general revisions of statutes; but it would seem more accurate to say that a codification or revision does not relate to more than one subject, within the meaning of such a provision, and that a title expressing that subject is not insufficient for failure to specify each subject to which the statutes, as revised, relate. Under a constitutional provision expressly excepting acts for codification or general revision from its requirements, it has been held that a statute which has for its purpose a revision of all existing code provisions on a particular subject is not within the constitutional restriction. * * *"

And where, as contended by defendant, a law was invalid when passed it may become valid by its incorporation in a properly revised code. Sec. 59 C.J. 892, § 489:

"Although an act is invalid because it was not passed in accordance with constitutional requirements, it may nevertheless become a statute on its adoption as part of a code or revision. The adoption and incorporation into a code of an act which as originally passed was in violation of a constitutional provision against amending or repealing laws by reference to title only cures the defect in this regard."

This is so even though the original law was unconstitutional, as stated in 59 C.J. 892, § 489:

"Defective Original Title. Although an act was unconstitutional as originally passed on account of containing matter different from what was expressed in its title, or referring to more than one subject, if otherwise constitutional, it becomes valid law on its adoption by the legislature and incorporation into a general revision or code, without reference to its title as originally enacted. * * *"

A good statement of the law in that respect is set forth under the title statutes 50 Am. Jur. 184 § 203:

"It has generally been held that codes and compiled or revised statutes intended to express either the whole of the general laws of a state, or of some great subdivision of such laws, may be adopted by one act under a general title without violating a constitutional provision prohibiting the enactment of any bill containing more than one subject and requiring that subject to be expressed in the title. In this respect, it has been declared that any construction of these constitutional provisions that would interfere with the very commendable policy of incorporating the entire body of statutory law on one general subject in a single act, instead of dividing it into a number of separate acts, would not only be contrary to its spirit but also seriously embarrassing to honest legislation. Sometimes, bills for the codification and general revision of laws are expressly exempted from the constitutional provision that no bill shall be passed containing more than one subject, which shall be expressed in its title."

In the Alabama case of Bales vs. State 63 Ala. 30-34, where the court had before it a statute not originally conforming to constitutional rules as to revising and amending laws, had this to say:

"Whether the mode of legislative procedure, prescribed by the last clause of the second section of the fourth article of the constitution of 1868, was observed in the original enactment of this statute, is not a question of any importance in this cause. It was introduced into, and forms a part of the present Code, which, in all its parts and provisions, was enacted in conformity to the constitution, and embodies all public statutes, of a general and permanent nature, of force in the State. Dew v. Canningham, 28 Ala. 466; Hoover v. The State, 59 Ala. 57. It may embrace statutes not originally enacted in the forms prescribed by the constitution; and if that be true, they are valid, not from the day of their original enactment, but from the day the Code became operative."

See also the later Alabama case Builders and Painters Supply Company vs. Lucas 24 So. 416-419, 119 Ala. 202.

In the Idaho case of Anderson vs. Great Northern Ry. Co., 25 Ida. 433, 138 P. 127-129, that court observes:

"The objection that section 5140 of the Revised Codes, as originally enacted and found in the 1899 Session Laws, pp. 153, 116, is unconstitutional and in violation of section 16, art. 3, of the state Constitution, is without merit, for the reason that this section was subsequently incorporated in the Revised Codes and was adopted as a part of the entire body of the Revised Statutes and as a part of the complete code of laws of the state. It is now too late to raise the sufficiency of the title to a statute originally adopted prior to the date of the adoption of the Revised Codes, where such statute has been incorporated in the general code of laws. 36 Cyc. 1068; Central of Georgia R. Co. v. State, 31 S.E. 531, 104 Ga. 831, 42 L.R.A. 518; Kennedy vs. Meara, 127 Ga. 68, 56 S.E. 243, 9 Ann. Cas. 396; Christopher v. Mungen, 61 Fla. 513, 55 South. 273."

See also Curoe vs. Spokane & I. E. Ry. Co., 32 Idaho 643, 186 P. 1101.

A leading case upon this subject and cited in texts, Encyclopedias of Law and Annotations, is the case of Central of Georgia Ry. Co. vs. State 104 Ga. 831, 31 S.E. 531, 42 L.R.A. 518. It was there contended by the Company that the act before the court and the subject of the controversy was unconstitutional because it contained matters different from what is expressed in the title thereof. The State, on the other hand, contended that said act being codified as Sec. 2189 of the new code, the Act of 1895, adopting and making of force that code cured all of those defects, if any, which had existed in the prior act. The opinion is long and we briefly summarize the holding of the Georgia court by quoting the syllabus:

"The effect of this act is to make as part of the law of the state all new matter embodied in the Code of 1895 which could be constitutionally enacted by the legislature. It follows, therefore, that an act, though unconstitutional as originally passed, on account of containing matter different from what was expressed in its title, if otherwise constitutional, became valid law by its incorporation in the present Code, upon the passage of the act first above mentioned." 42 L.R.A. 518.

There was an attempt to raise this question in re Gillette Daily Journal 44 Wyo. 226-233, 11 P. (2d) 265, but there no reference was made to the Revised Statutes of 1931, the contention being that the Section 3 of the law there under consideration having been embodied in the revisions and compilations of 1899, 1910 and 1920, it was thereby validated. This court held that: "neither the revision of 1899 nor the compilations of 1910 or 1920 were approved by the legislature subsequent to the time that they were made."

The situation is now entirely changed, as we have stated, the revision of the statutes by the legislatures of 1929 and 1931, and the acts of the revision commissioners in compliance with the mandates of the legislatures come squarely within the provisions of the Wyo-

ming Constitution. Now the cases cited in re Gillette Daily Journal 44 Wyo. at page 233 are in point, as this court said the principal cases are:

"Central etc. R. Co. v. State, 104 Ga. 831, 31 S.E. 531, 42 L.R.A. 518; Kennedy v. Meara 127 Ga. 68, 56 S.E. 243, 9 Ann. Cas. 396; Christopher v. Mungen 61 Fla. 513, 55 So. 273; Ex parte Ferguson, 112 Tex. Crim. 152, 15 S.W. (2d) 650; State v. Horner, 35 So. Dak. 612, 153 N.W. 766; Anderson v. Railway Co. 25 Ida. 433, 138 Pac. 127, Ann. Cas. 1916, c. 191; Park v. Cotton Mills, 75 So. Car. 560, 56 S.E. 234."

Without reviewing the last cited cases at length, we say that we are in accord with the principles therein enunciated. If Chapter 73 Session Laws 1931 means anything, it means that the legislature had as its purpose to adopt and make effective a code of laws to be known as the Revised Statutes of 1931. Its intent was to give force, vitality and effect to every section of the revision by legislative enactment.

The answer to Reserved Question No. I is, No.

The answer to Reserved Question No. II is No.

The answer to Reserved Question No. III is, No.

BLUME, C. J. and RINER, J. concur.