McGRAW ELECTRIC COMPANY, A CORPORATION, APPELLANT, v. LEWIS & SMITH DRUG CO., INC., A CORPORATION, APPELLEE.

68 N. W. 2d 608

Filed February 11, 1955. No. 33593.

*Shotwell, Vance & Marchetti, Lynn A. Williams,* and *John H. Holm,* for appellant.

*Swarr, May, Royce, Smith & Story,* for appellee.

*Herman T. VanMell, Jack W. Marer,* and *Samuel V. Cooper,* amicus curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action in equity by McGraw Electric Company, a corporation, plaintiff and appellant, against Lewis & Smith Drug Co., Inc., a corporation, defendant and appellee, instituted and tried in the district court for Douglas County, Nebraska. The case was tried to the court at the conclusion of which a decree was rendered in favor of the defendant and against the plaintiff. Following the rendition of decree a motion for new trial was duly made and regularly overruled. From the decree and the order overruling the motion for new trial the plaintiff has appealed.

In order that a comprehensive understanding may be had of the issues and the matters involved in this appeal a rather lengthy exposition of the issues made by the pleadings and of the subject matter of the controversy appears to be necessary.

The Legislature of Nebraska at its regular session in the year 1937 enacted what was designated as the Fair Trade Act. The act was otherwise designated as chapter 136 of the Laws of 1937. It contained 13 sections, only 9 of which are of concern here. Eight sections now appear as sections 59-1101 to 59-1108, R. R. S. 1943, and the other appears in the revision of 1943 as section 59-801, R. R. S. 1943. The reason for this 9th section being placed as it is in the revision is that the act, except this one section, was new, whereas this section was amendatory of section 59-801, Comp. St. 1929, which was a part of the statutory article relating to acts and practices in unlawful restraint of trade. There have been no amendments to the act since its original passage. Statutory references hereinafter will be to the sections as they appear in the 1943 revision. Reference to the

1943 revision and the reissue thereof will not be repeated.

The title to the act as it was originally passed is as follows: "AN ACT to protect trade-mark owners, producers, wholesalers and the general public against injurious and uneconomic practices in the distribution of competitive commodities bearing a distinguishing trade-mark, brand or name through the use of voluntary contracts establishing minimum re-sale prices and providing for refusal to sell such commodities unless such minimum re-sale prices are observed; to amend Section 59-801, Compiled Statutes of Nebraska, 1929; to repeal said original section; and to declare an emergency."

Section 59-1101 is a definition of terms but otherwise it is not significant herein.

Stated positively and plainly, instead of negatively as in the statute, section 59-1102 provides that contracts establishing a minimum price of commodities by the producer or wholesaler of commodities themselves or the labels or containers of commodities which bear the trade-mark, brand, or name of the producer or wholesaler, which commodities are in free and open competition with commodities of the same general class produced and distributed by others, shall be lawful. There are other provisions in the section but they are not of immediate concern.

Section 59-1103 provides that no contract contemplated by section 59-1102 shall be entered into by anyone other than the owner of the trade-mark, brand, or name used in connection with such commodity or by a wholesaler specifically authorized so to do by the owner of the trade-mark, brand, or name.

Section 59-1104 contains conditional escape provisions from the obligations imposed by a contract entered into pursuant to the terms of section 59-1102. Nothing further need be said here about it since neither the cause of action nor the defense thereto depends upon any of these provisions.

The text of section 59-1105 is as follows: "Willfully

and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of sections 59-1101 to 59-1108, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

The purport and effect of the two sections together in the connection of concern in this case is to say that in the event of the entry into an agreement between the owner or wholesaler of a trade-mark, brand, or name used in connection with a commodity and a retailer or reseller of such commodity agreeable to the provisions of section 59-1102, no other retailer or reseller of such commodity, whether he be a party to the agreement or not, having notice of the agreement, shall sell, advertise, or offer for sale any such commodity at less than the price stipulated in the agreement. The action is the outgrowth of claimed violations of section 59-1105 in its relation to sections 59-1102 and 59-1103.

Section 59-1106 grants a producer or wholesaler the right to refuse to sell commodities contemplated by the act to anyone refusing to enter into an agreement pursuant to the terms of section 59-1102.

The two remaining sections in the revision, they being sections 59-1107 and 59-1108, have no bearing on the controversy herein.

Prior to 1937, section 59-801, Comp. St. 1929, was a prohibitory provision embracing a criminal penalty as follows: "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, within this state, is hereby declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both."

By the amendment of 1937 contained in the act under examination, which by revision has become section 59-801, R. R. S. 1943, the matters authorized by the provisions hereinbefore referred to were excepted from the former prohibition and the former penalty. The amended section is as follows: "Except as to any contract executed pursuant to or under the authority of the provisions of the Fair Trade Act, every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, within this state, is hereby declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both."

By petition and amendment thereto, for its cause of action, the plaintiff alleged substantially, among other allegations not necessary to be repeated here, that it was a corporation organized under the laws of the State of Delaware with a place of business at Elgin, Illinois, known as Toastmaster Products Division; that the principal business of the Toastmaster Products Division is the manufacture and sale of Model 1-B14 Automatic Pop-up Toasters which have for many years been manufactured and sold under the trade-mark "Toastmaster"; that these toasters were in fair and open competition with toasters of the same general class; that on August 2, 1952, the plaintiff entered into a retail agreement such as is contemplated by section 59-1102 with Hardy Furniture Company of Lincoln, Nebraska, and that on August 21, 1952, it entered into a like contract with Orchard & Wilhelm Company of Omaha, Nebraska; that in these agreements the minimum reselling or retail price on "Toastmaster" was fixed at $23; that the defendant is a corporation and is operating a retail drug store in Omaha, Douglas County, Nebraska; that the defendant was duly notified of the contracts entered into between

the plaintiff and Hardy Furniture Company and Orchard & Wilhelm Company; and that after receiving notice of the agreements the defendant as a retailer advertised and offered for sale "Toastmasters" at a price less than $23, the minimum price fixed in the agreements contrary to the provisions of the Fair Trade Act and particularly to section 59-1105 thereof, and to the injury and damage of the plaintiff. In consequence of which plaintiff invoked protection through injunctive process and prayed for damages.

After the filing and disposition of a motion directed to the petition, the defendant filed a demurrer and later an amended demurrer. This amended demurrer was overruled. Thereafter an answer was filed which answer contained a renewal and reassertion of the amended demurrer. Issue was then joined by reply on the part of the plaintiff.

After issue was joined, as already indicated, a trial was had to the court which, as has also been indicated, resulted in a decree in favor of the defendant.

On the trial a considerable amount of testimony was adduced and numerous exhibits were received in evidence. A review of the details of this evidence however is not required herein. The basic facts are not in substantial dispute. The summary of the contents of plaintiff's petition which appears hereinbefore contains a fair reflection of the essential facts upon which the determination of the issues presented must depend. This, as we interpret, the defendant does not deny. The basic defense on the trial was not as to conflict on questions of fact but on the question of validity and constitutionality of the Fair Trade Act generally and particularly section 59-1105 thereof. This question was raised by the amended demurrer and preserved in the answer.

In actuality, as is indicated by the decree rendered, this approach is not different from that taken by the district court. The decree however will not be summarized or analyzed herein since, this being an equity

case, this court will consider it de novo and arrive at an independent conclusion. Lackaff v. Bogue, 158 Neb. 174, 62 N. W. 2d 889; Spencer v. Spencer, 158 Neb. 629, 64 N. W. 2d 348.

There are eight specifications of challenge of invalidity and unconstitutionality which are designated by letters from (a) to (h). These designations will be used in respect to these challenges or such of them as are necessary to be considered in making the required determinations in this case. An abbreviated but, we think, fair statement of these challenges is the following:

(a) The Fair Trade Act is violative of Article III, section 14, of the Constitution of the State of Nebraska, in that it is broader than the title.

(b) The Fair Trade Act is violative of Article III, section 14, of the Constitution of the State of Nebraska, in that it violates the provision thereof which states that no law shall be amended unless the new act contains the section as amended, and a repeal of the old section.

(c) Section 59-1105, being a part of the Fair Trade Act, is in conflict with and neither amends nor repeals section 59-801, R. R. S. 1943, which makes unlawful any combination in restraint of trade except any contract executed under authority of the Fair Trade Act, but fails to except combinations attempting to restrain trade beyond the scope or outside the parties to such contract.

(d) The Fair Trade Act constitutes an unconstitutional delegation of legislative power in violation of Article III, section 1, of the Constitution of the State of Nebraska, to fix prices of goods without conforming to any standards prescribed by the Legislature.

(e) The Fair Trade Act is violative of Article I, section 16, of the Constitution of the State of Nebraska, in that it grants to manufacturers the right to fix the retail prices of articles manufactured by them.

(f) Section 59-1105 is in conflict with and repugnant to section 59-1107.

(g) The Fair Trade Act has the effect of depriving of

liberty and property without due process of law, and constitutes legislation beyond the scope of the police power contrary to Article I, section 3, of the Constitution of the State of Nebraska, and section 1 of the Fourteenth Amendment of the Constitution of the United States of America.

(h) The Fair Trade Act is invalid and unconstitutional because at the time enacted it was contrary to and inconsistent with the Act of Congress of the United States known as the Sherman Anti-Trust Act (26 St. 209, c. 647, 15 U. S. C. A., § 1) and was therefore repugnant to Article VI of the Constitution of the United States which provides that the Constitution and laws of the United States shall be the supreme law of the land, and to Article I, section 8, of the Constitution of the United States, and that since it was invalid at the time of enactment it continues to so be invalid.

Specifications (g) and (h) will be considered first. These two challenge the Fair Trade Act on the ground of unconstitutionality under the Constitution of the United States. In (g) it is charged that the act deprives of property without due process of law and constitutes legislation beyond the scope of the police power and that it bears no relation to public morals, health, safety, or the general welfare and thus is repugnant to section 1 of the Fourteenth Amendment of the Constitution.

This specification must be resolved in favor of plaintiff and against the defendant. This particular act has not previously been before the Supreme Court of the United States but its substance in this respect has been before that court in proceedings arising out of similar legislation enacted by the legislatures of other states. Two such notable cases are Old Dearborn Co. v. Seagram Corp. and McNeil v. Joseph Triner Corp., 299 U. S. 183, 57 S. Ct. 139, 81 L. Ed. 109, 106 A. L. R. 1476. These cases came to the United States Supreme Court from the Supreme Court of Illinois where validity and constitutionality of an act similar in all material re-

spects to the one under consideration here was sustained. The two cases were decided by the United States Supreme Court in a single opinion. For the further purposes of this opinion these cases will be referred to as the Old Dearborn case.

The United States Supreme Court did not hold that the act of Illinois was violative of the United States Constitution. In its observations however it pointed out that such legislation had been held to amount to legislation authorizing unlawful restraint of trade, which was violative of common law, and so far as interstate commerce was affected it was invalid under the Sherman Anti-Trust Act of July 2, 1890 (26 St. 209, c. 647, 15 U. S. C. A., § 1). See Dr. Miles Med. Co. v. John D. Park & Sons Co., 220 U. S. 373, 31 S. Ct. 376, 55 L. Ed. 502.

The effect of this was not to say that such state legislation was unconstitutional but that it was invalid for the reason that it was in conflict with holdings based upon the prohibitions of common law and of United States statutes.

In this light it must be said that the Fair Trade Act is not violative of the Constitution of the United States as contended in specification (g).

Specification (h) is for the most part answered in favor of the appellant by what has been said with regard to (g). In the Old Dearborn case it was pointed out substantially that though such state legislation as this was violative of the Sherman Anti-Trust Act it was not violative of the Constitution of the United States because thereof.

One phase of specification (g) and the other specifications relate to constitutionality of the act within the meaning of the Constitution and laws of the State of Nebraska. These, or such of them as appear to be necessary to be considered in the determination of the issues involved, will be hereinafter discussed.

Basically the pleaded cause of action seeks to sustain the validity of section 59-1105 of the act. The attack

of the defendant responds to the contention of the plaintiff but it also challenges the constitutionality of the act as to other features as well. It appears appropriate to consider first the basic issue. This basic issue is presented by specifications (c), (d), (e), and (g).

Section 59-1102 of the act generally permits contracts for resale of commodities which bear the trade-mark, brand, or name of the producer or wholesaler of such commodities and which are in free and open competition with commodities of the same general class produced or distributed by others, which require that the buyer will not sell the commodities at less than the minimum price stipulated by the seller; also it permits contracts requiring buyers, on resale, to exact of buyers from them to resell at the minimum price established by the original seller; it also permits contracts that a buyer (buyer from the producer or subsequent wholesaler) will not sell to a wholesaler unless the wholesaler shall in turn agree with a retailer that he will sell to consumers for use at not less than the minimum stipulated price; and repetitiously it permits contracts with retailers that they will not sell below the stipulated minimum price. There are exceptions to these provisions in section 59-1104 but they require no further mention.

The constitutionality of the provisions of these two sections as to subject matter is not brought into question. The attack upon them relates for the most part to formal requirements essential in the promulgation of constitutionally valid legislation. This subject will receive consideration later in this opinion.

The substance of section 59-1105, in a paraphrase, is that when a contract has been entered into in conformity with section 59-1102, subject to the exceptions of section 59-1104, no person, whether he be a party to any such contract or not, shall willfully and knowingly advertise, offer for sale, or sell any such commodity at less than the price stipulated in such contract; and that

action will lie against any such person by any person damaged thereby.

It clearly appears from the record herein that the plaintiff was the producer of a commodity such as was the subject of the resale provision of the act and that the defendant, contrary to the rights of the plaintiff declared by the act, and in violation of section 59-1105, did advertise, offer for sale, and sell such commodities at a price lower than stipulated in contracts for the sale of such commodity. The defendant had not entered into a contract such as is contemplated by the act but came within the purview of a reseller at retail having knowledge of a contract or contracts with others. This not only clearly appears but it is admitted by the defendant.

It follows of course that ascertainment of the prevailing party must, at least in part, depend upon the constitutionality of section 59-1105 in its relation to the other parts of the act.

Specifications (c), (d), (e), and (g) in varying terms all challenge the constitutional power of the Legislature to impose the duty upon resellers or retailers of commodities coming within the purview of the act but who have not contracted pursuant to the terms of the act to conform to contracts entered into by others.

Specification (c) will not be discussed beyond saying that it relates for the most part to legislative procedure in the enactment and amendment of statutes.

Specification (d) in the main charges an unconstitutional delegation of legislative power contrary to Article III, section 1, of the Constitution. Particularly it challenges the power of the Legislature to allow the fixing of prices by private parties without also providing legislatively a standard therefor.

This question is of incidental concern but we do not think it of controlling importance on the issue being considered at this point, that is the right to require the adherence by third parties pursuant to section 59-1105 to contracts entered into conformable to the provisions of

section 59-1102. The question here is not of price fixing, contracts as between producer and retailer either with or without prescription of standards, but the validity and effect of the extension and imposition of obligations between contracting parties to persons who are not parties to such contracts. The validity of contracts such as are contemplated by section 59-1102 have been upheld.

Specifications (e) and (g) considered in the light of their language and the presentations made in the briefs point up and bring into focus the issue as to section 59-1105 in its relationship with section 59-1102 and the controlling Nebraska constitutional principles.

Specification (e) charges in substance that the act is unconstitutional and violative of Article I, section 16, of the Constitution of the State of Nebraska in that it grants manufacturers the right to fix the retail prices of articles manufactured by them. By what has already been said we have eliminated from consideration as controlling the phase of this charge dealing with fixation under section 59-1102, and direct attention only to that phase which relates to fixation of retail prices of retailers not coming under section 59-1102 but under section 59-1105.

The point of constitutional attack under this specification is that section 59-1105 impairs the obligation of contracts and makes an irrevocable grant of special privileges or immunities.

Specification (g) charges that the act is unconstitutional and in violation of Article I, section 3, of the Constitution of the State of Nebraska, in that it has the effect of depriving of liberty and property without due process of law; and also that it is legislation beyond the police power of the state.

The point that the act has the effect of impairing the obligation of contracts has not been supported by legal proposition by the party advancing it, therefore it will not be considered further herein except to say that on

its face it appears that here we are not dealing in the true sense with impairment of contracts but with impairment of the right to contract, the essence of which inheres in another point of attack made by the defendant. Whether or not legislation contains a grant of special privilege or immunity is not fully ascertainable from definition or declarative language of the legislation but in addition, reference and resort must be had to what in practice it is designed to and does accomplish.

The over-all purpose and design of this act is not defined or declared in the act itself. The declared purpose and design appears alone in the title to L.B. 131, Laws 1937, chapter 136, page 478. It has been previously quoted herein.

It is to be observed from this title that the purpose of the act is to protect trade-mark owners, producers, wholesalers, and the general public against injurious practices in the distribution of designated commodities. It is to be further observed that this purpose is to be accomplished through the medium of voluntary contracts establishing minimum resale prices.

It becomes clear from this that nothing in either the act or its title is definitive or declarative on the question of whether or not section 59-1105 in its relation to section 59-1102 has the effect of special privilege or immunity. Resort, therefore, for that purpose must be had to what it is apparent that this part of the act by its terms is designed to accomplish and may be reasonably regarded as permissible.

In this light the conclusion is inescapable that trademark owners, producers, and wholesalers may by the simple device of attaching to their commodities a distinguishing brand or mark and entering into a contract with a single retailer establish and maintain on a horizontal level for all retailers a minimum retail price.

It becomes appropriate to ask wherein in this is there a grant of special privilege or immunity?

In answer it is pointed out, and on this point the

parties do not disagree, that any combination of retailers themselves to effect a minimum price for the sale of merchandise or commodities to the public at retail would be illegal and void. Also the cases cited herein upholding the constitutionality of acts such as this and those denying constitutionality point this out.

An effect of this legislation is to permit one producer and one retailer to do on behalf of a class of retailers that which legally the members of the class are forbidden to do on their own behalf.

It compels retailers to the observance of the terms of an agreement to which they have never given assent.

It permits the impairment and destruction of the right of a retailer, who has purchased commodities in good faith and without restriction on the right of resale at the time of purchase, to freely sell such commodities to his customers.

It immunizes against competition between and among retail competitors handling such commodities in trade.

These aspects of grant are limited, as is clear, only to contracting parties under section 59-1102. To all others engaged in trade and commerce as producers, wholesalers, distributors, and retailers the grants and privileges of the act are denied.

The conclusion in this connection is that as to this phase of the act it is unconstitutional for the reason that within the meaning of the constitutional prohibition it grants special privilege and immunity. Decisions sustaining this viewpoint will not be reviewed but only cited. They follow: Nelsen v. Tilley, 137 Neb. 327, 289 N. W. 388, 126 A. L. R. 729; Liquor Store, Inc. v. Continental Distilling Corp. (Fla.), 40 So. 2d 371.

As to specification (g), as pointed out, the attack is on the ground that section 59-1105 as related to section 59-1102 has the effect of depriving of liberty and property without due process of law.

Liberty within the constitutional meaning includes absence of arbitrary and unreasonable restraint upon a

person in the conduct of his business and the handling of his property. See, State ex rel. English v. Ruback, 135 Neb. 335, 281 N. W. 607; Nelsen v. Tilley, *supra;* Chicago, B. & Q. R. R. Co. v. McGuire, 219 U. S. 549, 31 S. Ct. 259, 55 L. Ed. 328.

It can hardly be questioned that this phase of the act within the constitutional meaning and within these concepts has the effect of permitting deprivation of liberty and property without due process of law. The most outstanding feature is, as has already been made clear, that retailers through legislative authority but without legislative standards for fixing prices are placed uncontrollably and solely in the hands of a producer and one retailer as to the minimum price at which they may sell the particular type of merchandise to which the contract between the two relates.

The plaintiff seeks to defend the act on numerous bases. One is that the power granted under section 59-1105 is one in the public interest and as such is constitutional.

On its face the act is a price-fixing act, not, it is true, one wherein the Legislature itself has assumed to fix prices, but one wherein it delegates to the extent and under conditions named that power without restriction or reservation to private parties.

This court has said that in the absence of appearance of public interest the Legislature may not itself impose prices. Boomer v. Olsen, 143 Neb. 579, 10 N. W. 2d 507. May it constitutionally confer upon others a right which it does not itself possess?

The plaintiff urges that the Legislature does have this right in this instance and for the reason that the act is in the public interest and does not run afoul of constitutional inhibition.

In primary essence the contention is that it is in the public interest that specified producers of merchandise which is in open competition with other merchandise of the same class shall have the right to fix the terms upon which such merchandise shall move to the ultimate

consumer and to compel all others to respect those terms.

This contention has been effectually sustained by courts of several states. See, Max Factor & Co. v. Kunsman, 5 Cal. 2d 446, 55 P. 2d 177, 299 U. S. 198, 57 S. Ct. 147, 81 L. Ed. 122; Burroughs Wellcome & Co. v. Johnson Wholesale Perfume Co., 128 Conn. 596, 24 A. 2d 841; Seagram Corp. v. Old Dearborn Co., 363 Ill. 610, 2 N. E. 2d 940, 299 U. S. 183, 57 S. Ct. 139, 81 L. Ed. 109; Barron Motor v. May's Drug Stores, 227 Iowa 1344, 291 N. W. 152; Pepsodent Co. v. Krauss Co., Ltd., 200 La. 959, 9 So. 2d 303; Goldsmith v. Mead Johnson & Co., 176 Md. 682, 7 A. 2d 176; Johnson & Johnson v. Weissbard, 121 N. J. Eq. 585, 191 A. 873; Bourjois Sales Corp. v. Dorfman, 273 N. Y. 167, 7 N. E. 2d 30, 110 A. L. R. 1411; Lilly & Co. v. Saunders, 216 N. C. 163, 4 S. E. 2d 528, 125 A. L. R. 1308; The Borden Co. v. Schreder, 182 Or. 34, 185 P. 2d 581; Miles Lab., Inc. v. Owl Drug Co., 67 S. D. 523, 295 N. W. 292; Frankfort Distillers Corp. v. Liberto, 190 Tenn. 478, 230 S. W. 2d 971; Sears v. Western Thrift Stores, 10 Wash. 2d 372, 116 P. 2d 756; Weco Products Co. v. Reed Drug Co., 225 Wis. 474, 274 N. W. 426; Burche Co. v. General Electric Co., Court of Common Pleas, Dauphin County, Pennsylvania (not yet officially reported).

The opposite view has been taken by courts of equal standing in other states. Bristol-Myers Co. v. Webb's Cut-Rate Drug Co., Inc., 137 Fla. 508, 188 So. 91; Grayson-Robinson Stores v. Oneida Ltd., 209 Ga. 613, 75 S. E. 2d 161; Cox v. General Electric Co., — Ga. —, 85 S. E. 2d 514; Shakespeare Co. v. Lippman's Tool Shop Sporting Goods Co., 334 Mich. 109, 54 N. W. 2d 268; Union Carbide & Carbon Corp. v. White River Distributors, Inc., — Ark. —, 275 S. W. 2d 455. To these may be added the State of Utah wherein the matter has been passed upon by the nisi prius court but not the court of last resort.

In addition to a consideration of this subject these two groups of cited cases collectively present in great detail

the pro and con of all the questions presented by the appeal herein.

It is urged that the United States Supreme Court in the Old Dearborn case sustained the contention of plaintiff. We do not think that when the matter receives the proper legal approach that it may be said that it has done so in that or in any other case.

It is true that in the opinion there the court did arguendo in strong language indicate a conviction that such state legislation was constitutional. This however was not the issue decided by the United States Supreme Court.

The issue decided there was that of whether or not the constitutionality of such legislation was a matter for determination by the state through its legislature and its courts or by the United States Supreme Court. It held that this was a question for determination by and within the state, and in clear terms accepted the determination by the state on that basis.

In subsequent litigation in other cases involving the same question, some of which have been decided one way and some the other, parties have sought unsuccessfully to have review of this subject by the United States Supreme Court. We think it is reasonably inferable from this that that court is still satisfied with its decision that the constitutionality of statutes containing the substance of the one under consideration here is a matter for decision by the courts of the particular states in and for the states.

It is not possible to draw from the act an indication of recognizable public interest to be served by the power which flows from section 59-1105. It is likewise impossible to draw any such indication from the title to the act.

The question of whether or not legislation is in the public interest is ordinarily one for legislative determination, however it may not under the guise of regulation in the public interest impose conditions which are on their face unreasonable, arbitrary, discrimina-

tory, or confiscatory. See, Petersen Baking Co. v. City of Fremont, 119 Neb. 212, 228 N. W. 256; Nelsen v. Tilley, *supra*; Boomer v. Olsen, *supra*.

For the most part the public interest for which the plaintiff contends, if it may be regarded as such, appears in the evidence of plaintiff as to the motivation of interested parties in presenting the proposal of this legislation to the Legislature of Nebraska and other legislative bodies and the motivation of the Legislature of Nebraska and other legislatures in its adoption.

It is trite to say that motive alone may not be accepted as a criterion for the determination of the constitutionality of legislative action.

The motive or purpose is referred to at great length in the briefs. In great detail it is said that it is to protect the producer and give him a fair price in the disposition and distribution of his commodity, and to protect the retailer in his disposition thereof.

This motive or purpose of the legislation as described in the evidence and briefs may by contracting parties be attached to such legislation, but it in nowise flows nor is it required to flow from that which is empowered by the legislation.

This motive or purpose of the Legislature does not become a sanction to action in conformity therewith by contracting parties under section 59-1102. There are no standards or requirements whereby contracting parties are obligated to conform to the claimed motivations or alleged purposes of the legislation.

The motive which induced the legislation does not and cannot become a check upon the power which is conferred by and inheres in the specific terms of the act.

Without any regard to these extraneously declared motives or purposes or any provision of the act, contracting parties may at will, with or without reason, arbitrarily, uncontrollably, or even capriciously by mere fiat and notice apply the provisions of section 59-1105.

We are unable to find an escape from the conclusion

that such a grant of power is unconstitutional and therefore void.

The conclusions arrived at up to this point fully dispose of the issue tendered by plaintiff in its pleaded cause of action.

Other points as to constitutionality of the act as a whole and as to certain elements of the act, as has been pointed out, have been presented and therefore we think, for reasons which will appear, one of them should be answered herein.

By specification (a) it is asserted that the act is broader than its title and because thereof Article III, section 14, of the Constitution of the State of Nebraska, has been violated. The point particularly made is that the subject matter contained in section 59-1105 finds no proper designation or suggestion in the title.

If this is found to be true then of course this provision was unconstitutional at the time of passage of the act under the specific terms of the constitutional language.

This appears to be true. It is to be observed that the title to the act refers to fixation of minimum prices "through the use of voluntary contracts." It does not in anywise express or carry a suggestion of a purpose to subject third parties to such contracts. Other reasons for this conclusion need not be discussed.

If the section, being unconstitutional, was an inducement to the passage of the act in its entirety, the act was unconstitutional. Moeller, McPherrin & Judd v. Smith, 127 Neb. 424, 255 N. W. 551.

There can be no doubt that section 59-1105 was an inducement to the passage of the act in its entirety. The plaintiff at least tacitly admits that this is true. The cause of action pleaded is made to depend on this premise. We therefore do not deem it necessary to cite authorities to sustain this viewpoint.

It becomes necessary to say that agreeable to the con-

tention contained in specification (a) the act at the time of passage was unconstitutional.

The plaintiff says substantially however that even if the act was unconstitutional for these reasons at the time of passage, it may not be said that this is true at the present time.

The basis of this contention is that the act was adopted with its title in 1937 and thereafter in 1943 the act without the title was duly and regularly carried into the regularly authorized revision of the Nebraska statutes which fact, the plaintiff says, bars the right to consider or make reference to the title in the present determination of the constitutionality of the act.

This question has been considered in other jurisdictions. By the weight of authority it has been held that when a legislative act has been carried into an authorized revision or codification which revision or codification has been duly and regularly adopted by the Legislature, an objection that it is unconstitutional on the ground that the act is broader than the title is not available.

The rule is stated in 82 C. J. S., Statutes, § 215, p. 356, as follows: "A constitutional provision that no bill shall embrace more than one subject which shall be expressed in the title is not violated by a legislative act adopting a codification or revision of statutes under some comprehensive title, * * *." See, also, Widney v. Hess, 242 Iowa 342, 45 N. W. 2d 233; Fidelity & Columbia Trust Co. v. Meek, 294 Ky. 122, 171 S. W. 2d 41; State v. Pete, 206 La. 1078, 20 So. 2d 368; Duke Power Co. v. Sommerset Co. Bd. of Taxation, 125 N. J. Law 431, 15 A. 2d 460; State v. Czarnicki, 124 N. J. Law 43, 10 A. 2d 461; Commonwealth v. Evans, 156 Pa. Super. 321, 40 A. 2d 137; Marston v. Humes, 3 Wash. 267, 28 P. 520; Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923, 28 Am. S. R. 382; McLane v. Paschal, 8 Tex. Civ. App. 398, 28 S. W. 711; The State v. Brassfield, 81 Mo. 151, 51 Am. R. 234.

A further expression of the rule appears in 82 C. J. S., Statutes, § 274, p. 459, as follows:

"Although an act, as originally passed, was unconstitutional because it contained matter different from that expressed in its title, or referred to more than one subject, it becomes, if otherwise constitutional, valid law on its adoption by the legislature and incorporation into a general revision or code, without reference to its title as originally enacted; * * *." See, also, Dillon v. Hamilton, 230 Ala. 310, 160 So. 708; Banks v. Peek, 249 Ala. 32, 29 So. 2d 418; Reagan v. Fentress County, 169 Tenn. 103, 83 S. W. 2d 244; Teem v. State, 79 Tex. Cr. 285, 183 S. W. 1144; State v. Pitet, 69 Wyo. 478, 243 P. 2d 177.

It is true that this act was carried into the 1943 revision which was duly authorized and thereafter regularly and duly adopted, and on the authority of the rule cited attack upon the title as such of the act as originally adopted is not available herein.

While this point is decided in favor of the plaintiff it avails nothing in favor of the constitutionality of the act as a whole.

As has been pointed out the act was invalid before inclusion in the revision for the reason that it was induced by the unconstitutional section 59-1105. Obviously for the same reasons that section 59-1105 was unconstitutional before incorporation in the revision it was unconstitutional thereafter. This conclusion appears to flow from the following from 82 C. J. S., Statutes, § 274, p. 458, as follows:

"Where a statute, as originally enacted, was unconstitutional as to content, or was void because, under the constitution, the legislature was without power to pass it, it ordinarily will not be validated by adoption and incorporation into a code or revision. For obvious reasons, an invalid statute does not become valid by being placed in a code which has no legislative sanction; * * *." See, also, Butler v. Guaranty Savings & Loan

Assn., 247 Ala. 4, 22 So. 2d 328; State v. Lee, 156 Fla. 291, 22 So. 2d 804; Fidelity & Columbia Trust Co. v. Meek, *supra;* State ex rel. Miller v. O'Malley, 342 Mo. 641, 117 S. W. 2d 319; Ridgill v. Clarendon County, 188 S. C. 460, 199 S. E. 683.

We hold therefore that the entire Fair Trade Act (Laws 1937, c. 136, p. 478) as well as section 59-1105, R. R. S. 1943, thereof (Laws 1937, c. 136, § 5, p. 480), are unconstitutional and void and that the decree of the district court should be and it is affirmed.

AFFIRMED.